MARSHALL v. ZINN et al.

No. 3654.    Decided July 28, 1921.    (199 Pac. 1029.)

1. HUSBAND AND WIFE—PARTNER'S WIFE'S DEED TO FIRM CREDITOR HELD MORTGAGE SECURING ONLY PORTION OF INDEBTEDNESS. A deed by a partner's wife to copartnership's creditor *held* a mortgage to secure only a particular portion of the firm's indebtedness to such creditor, instead of the entire indebtedness.

2. VENDOR AND PURCHASER—POSSESSION BY GRANTOR'S TENANT NOTICE TO PURCHASER OF GRANTOR'S INTEREST. Though the possession of a grantor ordinarily does not give grantee's purchaser notice of grantor's interest unless continued for a long period of time, the possession and occupancy of grantor's tenant does operate as notice, and puts a purchaser on reasonably prudent inquiry.

3. ESTOPPEL—GRANTOR'S FAILURE TO REPLY TO LETTER INQUIRING AS TO INTEREST HELD NOT TO ESTOP HER FROM CLAIMING INTEREST AS AGAINST GRANTEE'S PURCHASER. Where purchaser claiming under grantee had notice that grantor had at least an equitable ownership in the property, the fact that grantor did not reply to purchaser's letter, asking whether grantor claimed any title or interest in the premises, without suggesting or evidencing an intention to purchase the property, did not estop grantor from claiming such interests as against such purchaser.

4. ESTOPPEL—ONE FROM WHOM INFORMATION AS TO TITLE IS WILFULLY WITHHELD MAY DEAL WITH LAND ON PRESUMPTION THAT TITLE IS AS DISCLOSED BY RECORD. Where a person about to purchase property in the possession of a stranger to the title honestly and properly asks of the possessor for information as to his rights, and such information is willfully refused, he may

deal with the land on the presumption that the title is in fact as disclosed by the record, and the person in possession is estopped from setting up his claim to the injury of him to whom he refuses the information.

Appeal from District Court, Second District, Weber County; *A. E. Pratt,* Judge.

Action by Lettie Marshall against Altha B. Zinn and others. Judgment for defendants, and plaintiff appeals.

JUDGMENT SET ASIDE and case remanded.

*H. V. Van Pelt,* of Salt Lake City, for appellant.

*S. P. Dobbs,* of Ogden, and *Cheney, Jensen & Holman,* of Salt Lake City, for respondents.

CORFMAN, C. J.

Plaintiff commenced this action against the appellant to have a deed, absolute in form, declared a mortgage, the debt secured thereby adjudged paid, a subsequent conveyance of the premises by the holder of the mortgage vacated and set aside, and the title thereto quieted in the plaintiff.

In substance it is alleged in the complaint that in October, 1915, J. H. Marshall and W. O. Johnson, as copartners, were engaged in the automobile business at Salt Lake City, Utah, under the firm name of Marshall & Johnson, and had become indebted to the Merchants' Bank of Salt Lake City in about the sum of $15,000; that to secure the same the plaintiff gave a deed, intended as a mortgage, to said Merchants' Bank, upon certain real property in Ogden, Utah, at which time it was agreed that as soon as $8,000 of said indebtedness was paid said Merchants' Bank would release said mortgage and reconvey said premises to the plaintiff; that said deed so intended as a mortgage was on October 22, 1918, duly recorded in the office of the county recorder of Weber county; that on July 9, 1918, the defendant Stephen H. Lynch, by order of

court, became a receiver for said Merchants' Bank, and ever since and now continues to act in that capacity; that on February 21, 1919, said receiver executed and delivered a deed of conveyance for said real property to the defendant Altha B. Zinn, which said deed was also recorded in the office of the recorder of said Weber county; that at the time of the execution and delivery of last-mentioned deed said premises were in plaintiff's possession, and were occupied by one James Silver, a tenant, under a lease from the plaintiff, and that said defendant Zinn received said deed from said receiver with knowledge that plaintiff claimed to be the owner in fee and rightfully in possession of said property; that said indebtedness of $8,000, for which plaintiff gave said deed as security aforesaid, has since been paid, and a release and reconveyance of said premises demanded by the plaintiff, which demand has been refused; that the defendant F. C. Osgood, trustee, claims some interest or lien on said premises adverse to the plaintiff, but such interest or lien, if any, is subject to the title of, and void as to, plaintiff.

The separate answers of the defendants are, in effect, a general denial of the allegations of the complaint, as to the deed having been given by plaintiff to the Merchants' Bank as a mortgage lien on the premises, and as a further defense it is affirmatively alleged that the plaintiff should not be permitted to say that her deed to the Merchants' Bank was not an absolute conveyance of the title in fee to the premises, for the reason that prior to the purchase of said premises by the defendant Zinn said defendant made inquiries of the plaintiff, asking if she had or claimed any title or interest in the premises, and informed her of an intention to purchase the same of the receiver; that the plaintiff thereupon made no claim to said premises, nor gave any response to said inquiries, whereupon the defendant Zinn purchased the premises, took possession thereof, paid the taxes and insurance, and placed improvements thereon of great value. It is also alleged as a separate defense that prior to October 21, 1915, when said deed was given by plaintiff to the Merchants' Bank, said premises were incumbered by a mortgage thereon

in the sum of $2,500 in favor of Dan Pugh, and that an action was commenced by said Pugh to foreclose said mortgage on or about January 30, 1919, whereupon the said Lynch obtained an order of court, authorizing and directing him, as receiver of the bank, to sell said property to the defendant Zinn and pay off said mortgage; that in pursuance of said order the defendant Zinn paid to said receiver the sum of $3,675 for said premises, and took a conveyance thereof as aforesaid, all of which was done on the part of the defendant Zinn in good faith, without knowledge of any interest in or claim to said premises by the plaintiff. It is also alleged in the answer of the receiver that the Merchants' Bank took said conveyance of said premises from the plaintiff with the understanding and agreement that after the same was sold the proceeds thereof, when determined, were to be applied on the indebtedness of said Marshall & Johnson to the Merchants' Bank, that the proceeds of said sale were so applied, and that a balance is still due and owing on the said indebtedness of Marshall & Johnson.

Denials were interposed to all new matters alleged in the answers. Trial was had to the court without a jury. The court found in defendants' favor, and entered judgment dismissing plaintiff's complaint.

Plaintiff, after moving for and being denied a new trial, appeals, and as grounds for the reversal of the judgment assigns some 30 errors, alleged to have been committed by the trial court.

The more important questions raised by the assignments of error are whether or not the findings are supported by the evidence, and whether the conclusions and judgment are in accordance with law.

It appears from the evidence, and the trial court so found, that on and prior to June 11, 1914, the husband of plaintiff, J. H. Marshall, and one W. O. Johnson were copartners, dealing in automobiles under the firm name and style of Marshall & Johnson, and that said firm on said date had become indebted to the Merchants' Bank in approximately the sum of $17,000, largely represented by notes, one of said notes

being for the sum of $9,800, made and delivered on said day, June 11, 1914, and payable on demand. It was recited in said note that as collateral security for the payment thereof, or any other liability or liabilities of the makers (Johnson & Marshall, as copartners, and individually) to said bank, due or to become due, then or thereafter contracted, certain things had been deposited with said bank, to wit: An assignment of interest in Ogden real estate from Mrs. J. H. Marshall (plaintiff), a deed to certain Logan, Utah, property from J. H. Marshall, a deed to property near Rexburg, Idaho, from O. W. Johnson, and collateral notes taken for automobiles, all of which were delivered to said bank; that when said collateral was deposited with the bank, and as a part of the same transaction, the said bank made and delivered the following document:

"Salt Lake City, Utah, June 11, 1914.

"Marshall & Johnson, City—Gentlemen: In relation to your indebtedness to this bank and the collateral you have given us, will say, that on payment of $8,000.00 on your indebtedness, we will release the Ogden property, and on payment of an additional $4,000.00, we will release the Logan property, and on payment of $3,000.00 additional, we will release the Johnson property in Idaho, providing of course that other indebtedness has not been created in the meanwhile that is not properly secured. On the $2,000.00 indebtedness that has been running for about two months, we will turn over the balance of your collateral when this is paid, together with the payment of the other indebtedness.

"Very truly yours,

"CHAS. E. KAISER, Vice President."

At the same time the bank gave to the plaintiff the following:

"Mrs. Lettie H. Marshall, City—Dear Madame: In relation to the indebtedness of Marshall & Johnson to this bank, and the collateral given, will say that on payment of the first note for $8,000.00 we will release the Ogden property now in escrow at Ogden State Bank.

CHAS. E. KAISER, Vice President."

It does not appear that there was a note for $8,000 owing by Marshall & Johnson to the bank, but by mistake a $9,800 note, or some other, was so described or referred to.

It further appears and the court found that in the month

of October, 1915, following, the plaintiff desired to exchange the so-called Ogden property for certain real property in Ogden City, incumbered with a mortgage of $2,500; that plaintiff thereupon agreed with the bank that in consideration of the bank's releasing the "Ogden property" the city property should be substituted, and the same held by the bank as security for the indebtedness of Marshall & Johnson, on the same terms and conditions as was the Ogden country property. In pursuance of said understanding and agreement the said exchange of properties was made, and the plaintiff thereupon executed a deed, warranty in form, to the bank, but said deed was made subject to the $2,500 mortgage aforesaid, the same being a mortgage to Dan Pugh, theretofore made by plaintiff's grantor; that thereafter the plaintiff, in person or by tenant, possessed and occupied said last-mentioned real property, and paid the interest on the said mortgage to Pugh until December, 1918, and at the time of the sale thereof by the receiver for the said bank the said property was occupied by one James Silver, as the tenant of the plaintiff; that Marshall & Johnson failed to pay the indebtedness to the bank, and on or about October 23, 1914, became bankrupt; that said bank thereupon proceeded to collect said collateral notes so held as security, and applied the proceeds on said firm's indebtedness to it, and likewise sold the said properties of said partners at Logan, Utah, and at Rexburg, Idaho, and applied the proceeds of said sales to said indebtedness of Marshall & Johnson, thereby extinguishing said indebtedness, except a part of said $9,800 note, there remaining unpaid thereon, February 21, 1919, principal and interest, $3,251.24; meanwhile said bank had failed, and its affairs had passed into the hands of the defendant receiver, Stephen H. Lynch, who having in possession said $9,800 note, with said balance of $3,251.24 unpaid thereon sold and conveyed said Ogden City property to the defendant Altha B. Zinn for $3,675, under an order of the court authorizing and directing the same, and out of said sum of $3,675 paid the said Pugh mortgage, amounting to, principal and interest, $2,688.25, and the taxes against said property, amounting to, including

costs and penalties, $108.15, and applied the remainder, $876.60 as a credit on said $9,800 note of Marshall & Johnson to said bank.

The trial court further found:

That prior to said sale and conveyance of said property to the defendant Altha B. Zinn, C. V. Zinn, her husband, learned of the intention of Dan Pugh to enforce payment of the amount due and owing him on his said note and mortgage, and thereupon mailed letters of inquiry to the plaintiff concerning the Ogden City property, but that the plaintiff made no answer or reply thereto. "That in said letters said C. V. Zinn informed plaintiff of his intention to purchase said property, inquired of plaintiff if she claimed any interest therein, and asked to be informed as to such claim, if any she had, and as to what she would be willing to sell the same for. That plaintiff did not answer said letters, nor in any manner inform said C. V. Zinn, or his wife, of her claims in and to said property until she filed this action in September, 1918; that said C. V. Zinn made no inquiry of plaintiff or her tenant as to whether plaintiff had or ·claimed any interest in said property other than as made in said letters. Thereafter said C. V. Zinn, believing from the silence ·of plaintiff that she claimed no interest in said premises, and relying thereon, and on the deed of conveyance made by plaintiff to said bank as aforesaid, purchased said property for his wife, as aforesaid, and thereupon made necessary and valuable improvements thereto at a cost to himself and wife of $2,500 or more. That on February 25, 1919, defendant Altha B. Zinn procured a loan from defendant F. C. Osgood, acting as trustee under the provisions of the will of C. F. Osgood, deceased, with power as trustee to loan moneys belonging to the trust funds of said estate in his hands upon real estate mortgages, said loan being in the sum of $3,000, evidenced by three notes dated February 25, 1919, due respectively one, two, and three years after date, in the sum of $1,000 each, each bearing 8 per cent. interest per annum, and by a mortgage for the same sum, to secure payment of said notes according to their tenor and effect, of same date, and signed by said Altha B. Zinn, said notes being signed by her and C. V. Zinn, and both said notes and said mortgage being delivered to defendant Osgood, as such trustee, and said $3,000 by him loaned to said other defendant. That said C. V. Zinn knew said property was in the possession of James Silver at the time of purchase of said property by him for his said wife, but that, other than as herein set forth, neither said C. V. Zinn, his said wife, nor said F. C. Osgood had any notice or knowledge of any interest, claim or right of plaintiff therein."

Upon the foregoing findings of fact the trial court made and entered its conclusions of law to the effect that the sale

of the Ogden City property by the receiver to the defendant Zinn was a valid sale, and that the deed executed and delivered by said receiver conveyed to her an indefeasible title in fee.

It was the theory of the plaintiff in the trial of the case that she gave the deed in question as security only; and upon the express condition that after there had been paid $8,000 on the indebtedness of Marshall & Johnson to the Merchants' Bank the premises conveyed should be released and discharged of all liens or claims against said premises on the part of said bank.

If we correctly understand the contention made by the defendants it is that the plaintiff conveyed the premises absolutely, the same to be sold by the bank and the proceeds applied to any amount then due and owing it by Marshall & Johnson. Further, that as to the defendant Zinn, they claim she purchased the property of the receiver in good faith, relying on the record title after making proper inquiries of the plaintiff as to whether she claimed any interest in it, to which inquiries plaintiff made no reply, and therefore, in either event plaintiff is now estopped from claiming any interest in the premises.

After carefully reading the entire transcript of the evidence in the case, we are thoroughly convinced that the deed made by the plaintiff to the Merchants' Bank was intended as a mortgage to secure payment of $8,000 only of the entire indebtedness of Marshall & Johnson. The defendants insist, however, that the plaintiff's deed of conveyance to the bank was made with the understanding and an agreement entered into between the plaintiff and the bank to the effect that the property conveyed should stand as security for the payment of the entire indebtedness of Marshall & Johnson to the bank, without qualification, and that the deed in question passed, coupled with the power to sell the premises and apply the proceeds of sale as payment thereon. That is what the defendant receiver did do, but not until after more than $8,000 of the indebtedness of Marshall & Johnson had been paid. Both the plaintiff and her husband, J. H. Marshall, testified

positively that the agreement on the part of the bank was that when the first $8,000 of the indebtedness of Marshall & Johnson had been paid the premises conveyed by the plaintiff to the bank were to be released; and if the written statements of the bank officer, who participated in the transaction in behalf of the bank, are to be believed, over his own signature, then such was the actual fact.

With respect to what was intended by the parties when the transaction was entered into, the letter of Charles E. Kaiser, vice president of the bank, written at the time, is somewhat illuminating, and in this connection will bear repeating in part, although heretofore set forth in full in connection with the trial court's findings. It reads:

"In relation to your indebtedness to this bank and the collateral you have given us, will say, that on payment of $8,000 on your indebtedness, we will release the Ogden [plaintiff's] property, and on payment of an *additional* $4,000 we will release the Logan property," etc. (Italics ours.)

The only interpretation we can place on the language employed is that the first $8,000 paid on the indebtedness of Marshall & Johnson, no matter from what source, entitled the plaintiff to a release of her property. Apparently the witness Kaiser so understood the transaction. He testified as follows:

"Q. In the conversation between Mr. Pingree [bank president] and Mrs. Marshall was anything said with regard to the payment of $8,000 upon the indebtedness? A. Why I think the conversation was along the line of the entire indebtedness. Q. Yes, and an $8,000 payment upon the entire indebtedness; that is the way you understood it, was it not? A. I think that was about it."

Then again, November 7, 1917, the plaintiff addressed a letter to the bank president, Mr. Pingree, in which she said:

"You will remember the agreement between your bank and myself in regard to the property I gave as security in connection with the Marshall-Johnson account, 'that upon the collection of $8,000 you will release my property.' I have been advised that you have realized much more than $8,000, and would ask that you will please send me the deeds to my property."

The president replied:

"We beg to acknowledge receipt of your letter of November 7th

relative to deed on Ogden property. We do not know whether you are advised or not, but during the last week a suit has been started against us for the return of moneys that have been collected. Some one connected with the bankruptcy proceedings are the interested parties. We cannot give any consideration to your request until after these lawsuits are settled."

We think the only just inference that may be drawn from these communications is that the bank understood, as did the plaintiff, that upon payment of $8,000 on the total indebtedness of Marshall & Johnson the plaintiff's property was to be released. Indeed the record is quite conclusive that the plaintiff's property should have been released before there was an exchange of the country property for the city property, and that she gave the latter conveyance or deed without being apprised of the exact standing of the financial affairs of Marshall & Johnson with the bank. Anyway, it must be conceded, and it is shown by the evidence beyond the peradventure of a doubt, that the plaintiff gave the deed for the city property to the bank upon precisely the same terms and conditions that she gave the assignment of the country property.

We are of the opinion, therefore, that the trial court erred, in the manner complained of by plaintiff, in finding that she gave her property as collateral security for the payment of the note for $9,800 made by Marshall & Johnson to the bank. True, there was such a note, but nowhere in the record does it appear that she was in any sense a party to it, or had any knowledge that such a note was in existence, or that she conveyed her property as security upon the conditions in said note contained.

Passing to the contention made by the plaintiff that the court erred in finding that the defendant Zinn purchased the property in question in good faith and without notice of the plaintiff's claims thereto, and the court's conclusion:

"That the plaintiff is not only estopped to claim said property by her deed to said bank, but by her silence and negligent failure to assert her title to said property when informed by said C. V. Zinn of his intentions to purchase the same, and when inquiry was made of her by said C. V. Zinn as to whether or not she had any interest in the property, and by the subsequent purchase and improvement

thereof by the defendant Altha B. Zinn in reliance upon the record title thereto appearing in said bank and the apparent right of the receiver to sell said property."

The bank at no time had possession under the deed from the plaintiff. It paid no taxes, no insurance, nor did it assume to exercise any property rights or control whatever over the premises. It is an admitted fact that at the time the defendant Zinn took the deed from the bank's receiver, and for some three years prior thereto, plaintiff's tenant was in the actual use and occupancy of the premises, and that all the rentals therefrom were paid to the plaintiff. Prior to leasing the premises the plaintiff herself occupied and used the premises as a home, paid the taxes and insurance, and made improvements thereon. While it is true that        2 possession of a grantor ordinarily does not give notice unless for a long period of time, possession and occupancy by the tenant does operate as notice, and puts a purchaser on reasonably prudent inquiry. *Randall* v. *Lingwall,* 43 Or. 383, 73 Pac. 1; *Dickey* v. *Lyon,* 19 Iowa, 544. In this case we think any inquiry at all of the tenant would have readily disclosed the fact that the plaintiff claimed title and ownership of the property under consideration.

But it is contended by the defendants here and the trial court found, that the defendant Zinn made inquiry direct of the plaintiff concerning whether or not she claimed any title or interest in the premises. These inquiries it is claimed by the defendants were in the form of letters addressed and mailed to the plaintiff in Idaho by C. V. Zinn, the husband of the defendant Altha B. Zinn, who was acting for and transacted the business with the bank's receiver in her behalf. The letters were not produced. The plaintiff denied having received them. Be that as it may, they would seem to serve a twofold purpose only, that of advising that the defendant Zinn had knowledge of the plaintiff's relationship to the property, and that the defendant desired to purchase plaintiff's interest in the same.

Furthermore, under date of January 2, 1919, a letter was addressed to the receiver of the Merchants' Bank concerning the property in question, as follows:

"In looking over the records in the office of the county recorder of Weber county, I find certain premises located at No. 2567 Fowler avenue in Ogden in the name of the Merchants' Bank, Salt Lake City, with a first mortgage of $2,500. A pencil notation appears on the records, stating that L. H. Marshall is owner. Mortgagee states that Mr. Marshall is delinquent in payment of his interest, and that his mortgage is subject to foreclosure. The property is in a desirable location, and before foreclosure proceedings are commenced, with expenses incident thereto, it appears that it would be better that Mr. Marshall sell his equity, if he has any equity. If satisfactory figure can be obtained for the premises I will consider purchasing same, as I am in the market for a place of the size of the premises referred to. Would be glad to hear from you on the subject."

The witness C. V. Zinn, who claims he wrote the letters, testified as to their contents:

"Well, I wrote to Mrs. Marshall and told her that I was in the market for a place, about such a place as Pugh had a mortgage on, and asked her if she had any equity in the place under consideration, and, if so, what it was, and if she wished to dispose of her equity, if she had one, and for what figure," and "that was the substance of all the letters."

This same witness further testified that he had written a letter to plaintiff's husband for Pugh, who held the mortgage on the property, requesting remittances of past-due interest. The letter reads:

"I would be glad to have you remit the interest due on your note. At the same time kindly let me [Pugh] know what you wish to do about said note—whether you wish to pay it or renew the mortgage."

Another letter written on September 4, 1917, reads:

"Yours of the 28th ult. at hand and noted. Your note and mortgage is due on the 20th of this month of $2,500. In regard to extending or renewing the mortgage, I would not care to renew it to exceed $2,000, but if you wish to have it extended the $2,000 for two years longer, and will pay the difference of $500, it will be all right with me."

In view of the foregoing communications and manifestations of knowledge on the part of C. V. Zinn, who represented the defendant Altha B. Zinn in all matters and things leading up to her purchase of the property and the taking of the receiver's deed therefor, in our judgment there is practically

nothing left to support the contention of the defendants that some duty rested upon the plaintiff to make disclosures of her interests, or that by reason of her silence the defendants may now invoke the doctrine of estoppel. Defendants' counsel make the contention that the plaintiff voluntarily put the title to her property in such a condition that the public record imparted no notice of her claims, and the only way that her interests could be ascertained was upon inquiry from her or the bank; that she created a situation, and by her silence with respect thereto an innocent person, purchasing of the bank, would suffer by it; that by so doing the loss should fall upon plaintiff. Under such circumstances they state the rule to be, and we think correctly, as follows:

"Where a person about to purchase property in the possession of a stranger to the title honestly and properly asks of the possessor for information as to his rights, and such information is willfully refused, he may deal with the land on the presumption that the title is in fact as disclosed by the record, and the person in possession is estopped from setting up his claim to the injury of him to whom he refuses the information."

Counsel cite the following cases in support of the above: *Riley* v. *Quigley*, 50 Ill. 304, 99 Am. Dec. 516; *Yates* v. *Hurd*, 8 Colo. 343, 8 Pac. 575; *Trumpower* v. *Marcey*, 92 Mich. 529, 52 N. W. 999; *Ford* v. *Loomis*, 33 Mich. 121; *Dozer* v. *Squires*, 13 La. 130.

But no such case is presented here. In this case the plaintiff's tenant was in actual possession of the premises. No inquiry was made of the tenant. Nor was there a hint or suggestion in the letters claimed to have been written to plaintiff by the defendant that she had any intention ·3, 4 of dealing with the bank, or its receiver, with respect to the property. Moreover, as has been pointed out, defendant had actual knowledge and fully appreciated that the plaintiff had at least an equitable ownership in the property. If defendant had advised plaintiff of an intention to purchase of the bank's receiver, and that he would rely on the deed from her to the bank in so doing unless she asserted some claim to or interest in the property, an entirely different case would be presented and the rule invoked by defendants'

counsel might reasonably have some application. But defendant did not do that. The effect of defendants' communication was such as to apprise plaintiff that it was understood that plaintiff had an interest in the property. In our judgment the record here, in equity and good conscience, will not permit of the plaintiff being divested of her property upon the flimsy showing or pretext of good faith made by the defendants. Upon the issues presented by the pleadings and under the evidence we think the trial court should have entered judgment and decree as prayed for by plaintiff in her complaint, with this exception: It appears that the defendant Osgood's mortgage was given by the defendant Zinn for money loaned to and used by her in discharging the prior mortgage on the premises held by Dan Pugh, to the amount of $2,688.25, and that therefore the said Osgood mortgage should stand as a valid and subsisting mortgage lien against the property.

From what has, been said it follows that the judgment entered in defendant's favor should be, and the same is hereby, vacated and set aside.

Let the cause be remanded, with directions to the district court to modify its findings in accordance with the views herein expressed; that it enter judgment and decree in plaintiff's favor, adjudging said real estate to be free from the lien of mortgage given by plaintiff to the Merchants' Bank; that the defendant Stephen H. Lynch, as receiver of said bank, be directed and required to forthwith reconvey said real estate to the plaintiff; that the conveyance of said receiver to the defendant Altha B. Zinn, be declared null and void, vacated and set aside, and plaintiff's title quieted as against all claims of the defendants, except that the said premises stand charged with the mortgage held by the defendant F. C. Osgood, trustee, the indebtedness thereof to be paid by the plaintiff. Costs to be taxed against the defendant Altha B. Zinn and Stephen H. Lynch, receiver.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.