## MEAGHER v. DEAN et al.

No. 6102.   Decided June 15, 1939.   (91 P. 2d 454.)

Rehearing denied August 2, 1939.

174

*Brigham S. Clegg* and *James M. Carlson,* both of Salt Lake City, for appellants.

*Mary Alice Meagher,* of Salt Lake City, for respondent.

PRATT, Justice.

N. J. Meagher seeks to quiet his title to the real estate involved in this case. The defendant, William Lyle Eldredge, a minor, prays that his title to said property be quieted. This prayer is attached to an "affirmative defense" and not to a counter-claim. The defendant Lucinda E. Dean seeks no affirmative relief. Chronologically the facts are these:

In October, 1929, Lucinda Dean owned the property. On the 31st of that month she exchanged properties with a Thomas J. Davis. She gave him a warranty deed to the premises. Davis did not record the deed.

On November 1, 1929, Davis and his wife mortgaged the premises to N. J. Meagher, plaintiff herein. The mortgage, along with the Dean-to-Davis deed, was delivered to

Meagher. The latter did not, at that time, record either instrument.

On December 22, 1930, the property was sold to the county for taxes.

About April 12, 1931, one Ben Baxendale and his wife entered into possession of said property under a sale agreement with Mr. and Mrs. Davis. They paid some instalments upon the contract, then defaulted, but remained in possession of the premises. Some of the instalments were forwarded to a bank at Vernal, Utah, of which plaintiff N. J. Meagher was cashier. They were forwarded for the credit of Davis, but three of them were credited to the account of Meagher.

Mrs. Dean thought Davis had defrauded her. From an abstract of the title she learned that he had not recorded her deed to him. As she could not get, from him, any reply to her letters, she conceived the idea of transferring the property to another. This was done, she said, under the belief that if her deed to him were put on record while the property remained in her name, he would get the property; but not if she transferred it.

On December 8, 1933, she executed a warranty deed to her daughter. It was recorded the same day. On November 2, 1934, the daughter reconveyed to the mother by a warranty deed. This deed was recorded the day of its date.

On November 4, 1934, Mrs. Dean paid some instalments upon the then four years' delinquent taxes.

On November 16, 1934, she executed a warranty deed to her grandson, William Lyle Eldredge, a minor, a resident of Colorado, and the other defendant in this case. This deed was recorded the same day. Mrs. Dean testified that she mailed this deed to her grandson upon the condition that his father would pay $500 for the property, the payments to be made, if desired, out of the rents from the premises. She contends that $288 has been paid upon that purchase price. There is, however, confusion in the record as to how this sum was paid. Mrs. Dean claims to have received rent

from the Baxendales and others from the premises, which apparently she desires to have considered as instalments on the purchase price. Mrs. Baxendale on the other hand is very uncertain as to having paid anything to Mrs. Dean. The place rented for $8 per month, and there were other tenants in the place following the Baxendales who apparently leased from Mrs. Dean. All in all, the evidence probably justifies the conclusion that Mrs. Dean did collect rent from the place for about three years prior to the date of trial (March 24, 1938) which would equal the sum of $288.

On November 23, 1934, plaintiff N. J. Meagher recorded the Davis mortgage and the Dean-to-Davis warranty deed.

About April 5, 1935, the Baxendales left the premises at the insistence of Eldredge and for the reason, as given by Mrs. Baxendale, that they did not know whom to recognize as the owner of the premises, Meagher, Mrs. Dean, or young Eldredge. Conflicting demands had been made upon them.

On January 9, 1936, Mrs. Dean redeemed the property from the balance of delinquent taxes.

On April 19, 1935, Davis and his wife quit-claimed their interest in the premises to Meagher in consideration of the cancellation of the note and mortgage. This deed was recorded July 2, 1937.

The trial opened in the lower court with the parties in the position that they were as of July 2, 1937, Mrs. Dean, however, exercising control over the premises. Young Eldredge, in his answer, claims that he and his predecessor have been in possession of said property and claimed title thereto for more than seven years and have paid the taxes thereon since 1928. The lower court found that the Baxendales were in possession of the property from 1931 to 1935 as tenants of Davis. This would negative seven years' possession by the defendants. We see no reason for disturbing that finding. In fact, as far as Mrs. Dean is concerned, there is little to which she can lay claim under the facts of the case. Her activity, in looking after the property and collecting the rents at a time when she claims the property belonged to

her grandson, was such that one is assailed with a grave doubt of the sincerity of her claim that the property really is his. It is interesting to note that the boy's father, who, supposedly, was responsible for the payment of the $500 for the property, did not appear and testify at the trial. The lower court found that Mrs. Dean acted fraudulently in executing the deed, but made no finding as to whether or not the deed was delivered to young Eldredge. In his conclusions of law he states that young Eldredge is not a bona fide purchaser for value which would entitle him to an interest in the property.

Let us presume that there was a delivery and acceptance of the deed, without passing upon the question of whether or not the testimony justifies such a finding. Upon such a presumption, the outcome of the case is dependent upon the application of Sec. 78-1-6, R. S. U. 1933. That section reads:

"Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proof, acknowledgment, certification or record, and as to all other persons who have had actual notice."

In *Toland* v. *Corey*, 6 Utah 392, 24 P. 190, we held that occupancy of the premises was enough to put the parties dealing with the premises upon inquiry. The Baxendales were in occupation of the premises as purchasers from and, after default, as tenants of Davis. Was that sufficient to put any purchaser on notice? We think so.

In 13 L. R. A., N. S., page 51, et seq.:

"The broad rule is laid down by a large number of the cases, that open, notorious, unequivocal, and exclusive possession of real estate under an apparent claim of ownership, is constructive notice to all the world of whatever claim the possessor asserts, whether such claim is legal or equitable in its nature." *Toland* v. *Corey*, 6 Utah 392, 24

P. 190; *Ayres* v. *Jack,* 7 Utah 249, 26 P. 300; *Neponset Land & Live Stock Co.* v. *Dixon,* 10 Utah 334, 37 P. 573; *Lynch* v. *Coviglio,* 17 Utah 106, 53. P. 983; *Stahn* v. *Hall et al.,* 10 Utah 400, 37 P. 585; *Dennis* v. *Northern Pac. Ry. Co.,* 20 Wash. 320, 55 P. 210.

"The doctrine of notice of a claim of title to lands from possession thereof springs from the apparent, not the true, relation that the person in possession bears to the title, and rests upon the theory that actual and visible possession is a fact of such a character and notoriety as cannot possibly escape the observance of a subsequent purchaser or encumbrancer, and is in its nature sufficient to put him on inquiry as to the rights of the possessor." *Neponset Land & Live Stock Co.* v. *Dixon,* supra.

"And such inquiry would lead to actual knowledge of the rights of the occupant, and therefore amounts to actual notice." *Neponset Land & Live Stock Co.* v. *Dixon,* supra.

"And the rule adopted by a large majority of the cases is that, to establish the fact of notice of a claim to land from possession thereof, it is not necessary to show that the person to be affected by the notice knew of the possession. If the possession was of the character required by law, and had sufficient notoriety, certainty, and exclusiveness, the notice was a legal deduction from the fact of possession; and all persons dealing with the title to the land were chargeable with notice of his possession, whether they had actual knowledge thereof, or not." 13 L. R. A., N. S., page 65.

"By the majority of the American cases, however, the rule is that the possession of a tenant is the possession of his landlord, and notice of the former, is notice of the latter." 13 L. R. A., N. S., page 100. See, also, *Marshall* v. *Zinn,* 58 Utah 505, 199 P. 1029.

And as to possession under a contract of purchase, see 13 L. R. A., N. S., page 103:

"Or at least such possession of a purchaser of land under an unrecorded contract therefor is sufficient to put all persons upon inquiry as to his right; and they are chargeable with that knowledge of the vendor's title which they would obtain by such inquiry."

"A person about to purchase land in the possession of a third person, who inquires of the person in possession as to his rights, learning that he holds as lessee of another, cannot safely stop his inquiry at that point, but should then inquire of the landlord." *Deetjen* v. *Richter,* 33 Kan. 410, 6 P. 595.

"And, without inquiry of him, no one can claim to be an innocent purchaser as against him." *Mallett* v. *Kaehler,* 141 Ill. 70, 30 N. E. 549; *Whitaker* v. *Miller,* 83 Ill. 381.

In *O'Reilly* v. *McLean et al.*, 84 Utah 551, 37 P. 2d 770, 775, we approved the following quotation:

" 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led.' "

The O'Reilly case, however, is not in point in facts with this, as it is one of actual notice.

The fact that Eldredge was a non-resident makes no difference.

"Nor was the purchaser of lands in the possession of a stranger to the title relieved from the duty to inquire as to the rights of the possessor by the fact that he resided in another state, so that it could not be assumed that he knew of such possession. This does not affect the principle of constructive notice." *Edwards* v. *Thompson*, 71 N. C. 177; *Hood* v. *Fahnestock*, 1 Pa. 470, 474, 44 Am. Dec. 147.

We are of the opinion that what has been said disposes of this case. There are no other errors assigned which would alter this conclusion. The judgment of the lower court is affirmed. Costs to respondent.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.