**In re GRANADA, INC., Debtor.**

**Peter W. BILLINGS, Jr.,
Trustee, Plaintiff,**

**v.**

**CINNAMON RIDGE, LTD., a Utah
Limited Partnership, Defendant.**

Civ. No. 87PC–0812.

Bankruptcy No. 87C–00693.

United States Bankruptcy Court,
D. Utah.

Oct. 28, 1988.

Peter W. Billings, Jr., pro se.

Gary E. Jubber, Fabian & Clendenin, Salt Lake City, Utah, for plaintiff.

N. George Daines, Daines & Kane, Logan, Utah, for defendant.

David E. Leta, Hansen & Anderson, Salt Lake City, Utah, for Unsecured Creditors' Committee.

Vernon L. Hopkinson, Watkiss & Campbell, Salt Lake City, Utah, for intervenor.

## MEMORANDUM OPINION

GLEN E. CLARK, Chief Judge.

This civil proceeding comes before the court on the trustee's Motion for Summary Judgment. Oral arguments on the motion were heard by the court on June 2, 1988. At the hearing, Peter W. Billings, Jr., and Gary E. Jubber, of Fabian & Clendenin, Salt Lake City, Utah, appeared on behalf of the trustee; N. George Daines, of Daines & Kane, Logan, Utah, represented the defendant, Cinnamon Ridge, Ltd.; and David E. Leta, of Hansen & Anderson, Salt Lake City, Utah, appeared on behalf of the Unsecured Creditors' Committee. At the hearing, the court granted a motion by the John E. Keiter Defined Benefit Plan & Trust ("Keiter") to intervene herein as a party defendant; and Vernon L. Hopkinson, of Watkiss & Campbell, Salt Lake City, Utah, entered an appearance on its behalf. At the conclusion of the hearing, the court took the trustee's motion under advisement and allowed the parties five days to file supplemental affidavits. Subsequent to the hearing, the parties informed the court that they had agreed among themselves that they would conduct four depositions and submit the transcripts to the court in lieu of the supplemental affidavits which the court had requested. The court, having now received those depositions and having considered the respective arguments of counsel, as well as the pleadings and memoranda on file, issues the following Memorandum Opinion. For the reasons set forth herein, the trustee's Motion for Summary Judgment is granted.

## FACTUAL BACKGROUND

This action concerns title to a mobile home park, commonly known as the Cinnamon Ridge Mobile Home Park, as well as ten acres of adjacent unimproved real property, located in Cache County, Utah. Defendant, Cinnamon Ridge, Ltd. (the "Partnership"), is a Utah limited partnership which was organized in November 1984. Granada, Inc., the debtor in this Chapter 11 case, was one of defendant Partnership's general partners and its sole general partner as of the commencement of this bankruptcy case.

Prior to the organization of the Partnership, Granada purchased the real property for the mobile home park from Gary E. and Dorothy W. Bodrero and executed a trust deed in their favor. The mobile home park was platted under the name "Cinnamon Ridge Mobile Home Park." Subsequent to the organization of the Partnership, Granada applied for and was given consent to use the name Cinnamon Ridge, Ltd., as an assumed name. The Certificate and Agreement of Limited Partnership was filed with the Salt Lake County and Cache County Clerk's Offices but was never filed with the Cache County Recorder's Office.

On or about July 23, 1985, "Granada, as trustor," executed a trust deed in favor of Scherer & Horn, M.D. Defined Benefit Plan Trust ("Scherer & Horn"), as beneficiary, which pledged the mobile home park as security. On or about August 15, 1985, "Cinnamon Ridge, Ltd., by its general partner Granada, Inc., as Trustor," executed a trust deed in favor of Keiter, also pledging the mobile home park as security.

Granada filed its Chapter 11 petition on February 13, 1987. Peter W. Billings, Jr., was appointed trustee of the Granada estate on June 22, 1987. On the date of petition, the records of the Cache County Recorder's Office showed Granada as the fee owner of the mobile home park; the Partnership did not have any recorded interest in the property as of that date. Moreover, it is undisputed that, as of the petition date, the following facts and circumstances were indicated:

(1) The sign at the entrance to the mobile home park read "Cinnamon Ridge Mobile Home Community";

(2) There was no sign on the property making reference to Cinnamon Ridge, Ltd., or to the Cinnamon Ridge Limited Partnership;

(3) Lots in the mobile home park were rented to tenants;

(4) None of the Cinnamon Ridge limited partners were residing at the property;

(5) Granada managed the mobile home park until December 1986, at which time Capital Hill Equities assumed management on behalf of Granada; and

(6) Advertising for the mobile home park was done in the name of Cinnamon Ridge Mobile Home Community.

When Granada filed bankruptcy, it listed the property at issue herein in its statement of affairs as "property held for another person."

The trustee filed the present action pursuant to § 544(a)(3) of the Bankruptcy Code to quiet title to the mobile home park and the adjacent unimproved property. The Partnership asserts that the property was Partnership property and that Granada held only "bare legal title," which was held in its name to facilitate development of the property. Since the equitable title to the property assertedly resided in the Partnership, the Partnership argues that the property never became property of the estate pursuant to § 541(d) and, therefore, the trustee cannot set aside the Partnership's unrecorded interest under § 544(a)(3). Moreover, the Partnership argues that the trustee cannot become a bona fide purchaser under § 544 because at the time of the filing of the petition the Partnership was in actual, open, and unambiguous possession of the mobile home park, which would put a purchaser on inquiry notice of the Partnership's interest in the property.

## DISCUSSION

Section 544(a)(3) of the Bankruptcy Code provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that ob-

tains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

By virtue of this so-called strong-arm power, the trustee is given, by force of law, the rights and powers of a perfected bona fide purchaser of real property as of the bankruptcy petition date.

In this case, the critical inquiry under § 544(a)(3) concerns the rights of the parties under Utah law had the debtor transferred the mobile home park and the unimproved real property to a bona fide purchaser on the petition date, and had the transfer been perfected on that date. It is clear that under Utah law (aside from principles of inquiry notice and partnership law which shall be discussed below), a bona fide purchaser would obtain title to the property free and clear of any unrecorded equitable interest which the Partnership may have had in the property. Utah Code Ann. § 57–3–3 provides:

Every conveyance of real estate hereafter made, which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded.

As indicated in § 57–3–3, the rights of a bona fide purchaser may be cut off through the proper imparting of constructive notice by the recording of a competing interest "as provided in this title." Those requirements are set forth in Utah Code Ann. § 57–3–2(1):

Every conveyance, or *instrument in writing affecting real estate*, executed, acknowledged, or proved, and certified, in the manner prescribed by this title ... shall, from the time of filing the same with the [county] recorder for record, impart notice to all persons of their contents. Subsequent purchasers, mortgagees, and lien holders are deemed to purchase and take with notice.

(emphasis added).

By virtue of these statutes, a bona fide purchaser who perfects his interest takes

free of any prior unrecorded interest in the real property. It is undisputed in this case that as of the petition date, there was nothing recorded with the Cache County Recorder which would have given constructive notice of the Partnership's claim to an equitable interest in the property. Granada was the record fee title owner of the property on the petition date. No representative or fiduciary capacity was there indicated.

The defendants mount several challenges to the application of this straight-forward analysis, contending that (1) the filing of the Certificate and Agreement of Limited Partnership imparted constructive notice of the Partnership's interest; (2) there could be no transfer of property of the debtor to a bona fide purchaser, since Granada, as general partner, held the property in trust for the Partnership, and Granada never had an equitable interest in the property; (3) a bona fide purchaser could not prevail under Utah law because the Partnership was in possession of the property, and any potential purchaser would be on inquiry notice of the Partnership's equitable or beneficial interest; (4) Granada could not have transferred the property because of its fiduciary duties as a general partner under Utah partnership law and would have been liable for criminal sanctions had it done so; (5) the trustee's avoiding powers under § 544 are restricted by trust principles, duties and obligations, incorporated into the Bankruptcy Code by § 541(d); and (6) it would be inequitable to allow the trustee to avoid the Partnership's interest and create a beneficial interest in Granada which never existed and which Granada did not assert.

*Constructive Notice.*

The defendants assert that constructive notice of the Partnership's equitable interest is effectively imparted since the Certificate and Agreement of Limited Partnership was filed with Cache and Salt Lake Counties. That documentation allegedly contemplates the development of the mobile home park and authorizes Granada to hold title to the property in its own name. How-

ever, the Certificate and Agreement was not filed with the Cache County Recorder's Office. Utah Code Ann. § 57–3–2 expressly requires the filing to be made with the county recorder in order to impart constructive notice. Filing with the county clerk is not sufficient to put potential purchasers on constructive notice.

Record title was indisputably in the name of Granada in its own capacity. Title could have been held in the name of "Granada, General Partner" or "Granada, General Partner of the Cinnamon Ridge Limited Partnership" or "Granada, in trust for the Cinnamon Ridge Limited Partnership." However, that was not done. Title, as it was held in this case, imparted no constructive notice of the Partnership's interest.

*Transfer of Property of the Debtor.*

The defendants next argue that the trustee's rights and powers under § 544(a)(3) are limited to that of a bona fide purchaser of "property of the debtor." Since under the defendants' analysis Granada never possessed any equitable interest in the property, the trustee may not utilize § 544(a)(3) to set aside the Partnership's equitable interest. As support for their position, defendants point to the debtor's statement of affairs in which the debtor indicated that it held title to the property for another person.[1]

A close reading of § 544(a), however, reveals no such restriction on the trustee's powers. The language of § 544(a) provides that "[t]he trustee shall have ... the rights and powers of ... (3) a bona fide purchaser of real property ... *from* the debtor." (emphasis added). The legal fiction created by the statute assumes a transfer *from* the debtor to a bona fide purchaser on the date of filing. The trustee is then clothed with whatever legal rights the bona fide purchaser would possess. There is no requirement in that language that the property transferred be property *of* the debtor. Of course, the debtor's interest in the property (or lack thereof) may well limit the bona fide purchaser's "rights and powers."

---

1. This argument is closely tied to defendant's defense under § 541(d) which is discussed *infra.*

In further support of their contention that avoidable property under § 544(a)(3) must be that of the debtor, defendants rely on other language in § 544(a), which provides: "The trustee ... may avoid any transfer of *property of the debtor* or any obligation incurred by the debtor that is voidable by ... (3) a bona fide purchaser...." (emphasis added). This § 544(a)(3) power to avoid any transfer of property of the debtor that is voidable by a bona fide purchaser is in addition to the trustee's § 544(a)(3) position of having the "rights and powers" of a bona fide purchaser, as discussed above. Furthermore, the parties to this action concede that Granada held at least bare legal title of record on the petition date. Under Utah law, Granada had sufficient interest in the property to enable it to transfer fee title to a bona fide purchaser free and clear of any unrecorded equitable interest. The Partnership may well have had cognizable claims against Granada for having done so, but the bona fide purchaser would still have taken title free and clear of those equitable claims under the recording statutes.[2]

*Inquiry Notice.*

The defendants also take the position that a bona fide purchaser could not prevail against the Partnership because the Partnership was in open, actual, and unambiguous possession of the mobile home park on the petition date. Since the Partnership was in possession, the defendants argue that any potential purchaser would be put on "inquiry notice" of the Partnership's ownership claims. This issue is complicated by the fact that the only way the Partnership could have been in possession would have been through its general partner, Granada, which, of course, in its nonrepresentative capacity was the record title holder.

Although § 544(a)(3) specifically provides that the trustee shall have the rights and powers of a bona fide purchaser "without regard to any knowledge of the trustee or of any creditor," courts have held that that restriction applies only to *actual* knowledge and not to *inquiry* notice, construed to be a form of constructive notice. *See In re Probasco*, 839 F.2d 1352 (9th Cir.1988); *McCannon v. Marston*, 679 F.2d 13, 16 (3d Cir.1982); *see also In re Richardson*, 23 B.R. 434 (Bankr.D.Utah 1982).

The doctrine of inquiry notice under Utah law was set forth by the Utah Supreme court in *Johnson v. Bell*, 666 P.2d 308, 310 (Utah 1983):

[Notice] required by § 57–1–6 [is] satisfied if a party dealing with the land had information of facts which would put a prudent man on inquiry and which, if pursued, would lead to actual knowledge as to the state of the title.

In that case, the court found no evidence that there was any activity on the property which would have reasonably alerted the

2. Counsel for Keiter apparently recognized this analysis in argument before the court at which time the following interchange with the court is noted:

MR. HOPKINSON: The Court inquired under Utah Law, had a B.F.P. come in and acquired this property from Granada, who would prevail in this action if this were a state court. Obviously, if this were a state court and that were the factual situation, Cinnamon Ridge would have a very uphill battle winning that case.

   \*   \*   \*   \*   \*   \*

THE COURT: Would you argue that if I put my home in your name, you record and, to go further, I let you live there. You sell that home to someone for value, that I can assert my rights in that property?

MR. HOPKINSON: Did I have an express trust agreement with you?

THE COURT: I don't know. I'll let you come to the conclusion. It's my home. You recognize that, and you say, "You can get it back any time you want. I'll take good care of it." That's our agreement.

MR. HOPKINSON: Am I in bankruptcy or out of bankruptcy?

THE COURT: You're out of bankruptcy.

MR. HOPKINSON: I'm out of bankruptcy, a B.F.P. would prevail. In bankruptcy, a 544(a)(3) fictitious B.F.P. would not prevail because of 541(d).

THE COURT: It appears to me you don't believe in fictions.

MR. HOPKINSON: It's probably how you read the book.

Keiter's position is that although a bona fide purchaser would prevail under Utah law outside of bankruptcy, the trustee with hypothetical bona fide purchaser status may not prevail under the Bankruptcy Code because of § 541(d). That argument is considered below.

trustee under a trust deed to adverse claims or which would have required the trustee's further investigation. *Id.; see also Meagher v. Dean,* 97 Utah 173, 91 P.2d 454, 456 (Utah 1939) ("[E]xclusive possession of real estate under an apparent claim of ownership is constructive notice to all the world of whatever claim the possessor asserts."); *Toland v. Corey,* 6 Utah 392, 24 P. 190 (1890); *Stumph v. Church,* 740 P.2d 820 (Utah Ct.App.1987).

In the view of this court, the doctrine of constructive inquiry notice under Utah law involves a two-step analysis: First, the court must determine whether the purchaser is in possession of facts, or whether inspection of the property would have brought to the purchaser's attention activity on the property, which would have reasonably alerted the purchaser to potential claims of any party other than the grantor or record title holder. If the purchaser has such facts, or if there is activity on the property reasonably alerting the purchaser to adverse claims, the purchaser is placed on inquiry notice; and, under the second step, the purchaser is charged with all knowledge that a reasonable due diligence investigation would have revealed. A purchaser's duty to investigate arises only when the purchaser is placed on inquiry notice under the first prong of the analysis.

In this proceeding, the court must first analyze what a proper inspection of the property would have brought to a purchaser's attention, if such an inspection had been conducted on the petition date.[3] The undisputed facts now before the court are that such a purchaser would have found a mobile home park being rented to tenants and being managed by an on-site manager under the direction of Granada. The sign at the entrance read "Cinnamon Ridge Mobile Home Community." There was no sign on the property making reference to Cinnamon Ridge, Ltd., or the Cinnamon Ridge Limited Partnership. Advertising for the mobile home park was done in the name of Cinnamon Ridge Mobile Home Community. Since "Cinnamon Ridge" was

an authorized d/b/a for Granada, there is nothing that an inspection would have produced which was inconsistent with record title. The defendants argue that had the purchaser inquired of the tenants or the property manager about the identity of the landlord, it would have been told about the Partnership's interest. That argument confuses the first prong of the test—determining whether the purchaser has a duty to investigate and inquire after inspection of the property—with the duty of inquiry itself which the purchaser must discharge once it is put on inquiry notice. Unless there is activity apparent upon inspection "which would have reasonably alerted" a purchaser of the claims of the Partnership requiring the purchaser's further investigation, no inquiry need be made. Here, a bona fide purchaser would not have been so alerted.

The defendants contend that where property is in the possession of tenants, a purchaser must inquire about the identity of the landlord. They cite *Meagher v. Dean,* 97 Utah 173, 91 P.2d 454 (Utah 1939), in support of that proposition. It may well be that possession by a tenant in 1939 was sufficient to alert a purchaser of potential adverse claims to residential property. However, we are unable to conclude that in 1988 tenants in possession of a mobile home park developed for that express purpose is sufficiently alarming so as to put a purchaser on constructive inquiry notice. *See Stumph v. Church,* 740 P.2d 820 (Utah Ct.App.1987) (Mortgagee's appraiser had no duty to inquire as to the identity of the landlord or to ask to see a copy of the lease or rental agreement when inspecting the property.).

*Trust and Fiduciary Duties.*

The defendants next argue that pursuant to Utah partnership law there existed an express trust between Granada, as general partner, and the Partnership. Therefore, defendants conclude that Granada never had an interest in the property, Granada could not transfer the property out of

---

**3.** Under § 544(a)(3) analysis, any actual knowledge which the trustee or the debtor as debtor in possession may have had on the petition date is irrelevant, whether or not such facts would have put the trustee or debtor on inquiry notice.

trust, and Granada would have gone to jail if it had attempted to do so. Defendants further contend that whatever Granada could have done, it did as an agent for the Partnership; thus, if Granada had transferred the property, the Partnership could have gotten it back. In support of their argument, the defendants call the court's attention to Utah Code Ann. §§ 48–1–18, 48–2–9(4), 48–1–7. Those sections provide in pertinent part:

48–1–18. Partner accountable as a fiduciary. Every partner must account to the partnership for any benefit, and hold as trustee for it any profits, derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

48–2–9. Rights, powers and liabilities of a general partner. A general partner shall have all the rights and powers, and be subject to all the restrictions and liabilities, of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to:

. . . .

(4) Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose.

48–1–7. Conveyance of real property of partnership.

. . . .

Where the title to real property is in the name of one or more or all of the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of section 48–1–6(1).

■ Initially, it can be observed that for purposes of § 544(a)(3), it is irrelevant that the debtor would violate its fiduciary duty by transferring partnership property to a third-party purchaser. Section 544 is designed to set aside unrecorded interests and secret liens. The question is not what liability, criminal or civil, the debtor might incur by transferring the property. The issue is whether a bona fide purchaser could obtain title free and clear of any equitable interest which the Partnership might claim. That question in this case is expressly answered by Utah Code Ann. § 75–7–409. Subsection (1) of that section mandates that trusts affecting real property be made of public record:

75–7–409. Recitals when title to real property is in trustee—Failure.

(1) When title to real property is granted to a person as trustee, the terms of the trust may be given either:

(a) in the deed of transfer; or

(b) in an instrument signed by the grantor and recorded in the same office as the grant to the trustee.

Since the defendants argue that the property was expressly held in trust by Granada for the benefit of the Partnership, that trust must be made of record "in the same office as the grant to the trustee"—the Cache County Recorder's Office. As noted, that was not accomplished. Although the Partnership agreement was filed with the county clerk, that filing did not meet the requirements of this section.

Subsection (2) of § 75–7–409 prescribes the effect of failing to make the trust of public record:

(2) If the terms of the trust are not made public as required in Subsection (1), a conveyance from the trustee is absolute in favor of purchasers for value who take the property without notice of the terms of the trust.

Therefore, a bona fide purchaser from Granada would take free and clear of the eq-

uitable interests of the Partnership as beneficiary of the express trust.

Moreover, the statutory provisions relied upon by the defendants may not provide a valid defense even by their own terms. For instance, § 48–1–7 provides that, where property is held in the name of the general partner, the general partner may convey the equitable interest of the Partnership if that act is within the authority of the partner. Paragraph 7.1(a) of the Certificate and Agreement of Limited Partnership authorizes the general partner to "acquire, hold or dispose of any real property ... and may sell such properties ... as the General Partner, in its absolute discretion, deems to be in the best interests of the Partnership." Therefore, even ignoring the effect of the recording statutes, a bona fide purchaser could take title free and clear of the equitable interests of the Partnership under Utah trust and partnership law. Had that transfer actually taken place, the Partnership may have had a cause of action against Granada for breach of fiduciary duties, but that would not affect the rights of a bona fide purchaser who would take title free and clear of the Partnership's equitable interests.

*Interplay Between §§ 544 and 541(d).*

■ The court now comes to the crux of the defendants' argument—that the trustee may not quiet title in the property by virtue of § 544(a)(3) because of the operation of § 541(d). Defendants' argument seems to be that, in addition to the rights of the Partnership under state law, the Partnership may preserve its equitable interest in the property because § 541(d) operates independently to limit the trustee's avoiding powers and mandates that the equitable interest which the debtor did not possess prepetition cannot now become "property of the estate."

Section 541(a) of the Bankruptcy Code defines and governs what is "property of the estate." That section provides in relevant portion:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

The concept of "property of the estate" includes not only rights to property which the debtor had prepetition (§ 541(a)(1)), but also additional rights which the trustee is given by virtue of the Bankruptcy Code (§ 541(a)(3), (4)). Section 541(d) expressly operates to limit the scope of the former, not the latter:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate *under subsection (a)(1) or (2) of this section* only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

(emphasis added). Thus, had the trust arrangement between Granada and the Partnership been a matter of public record on the petition date, it is clear that only a legal interest and not an equitable interest in the property would have become property of the estate. However, the trustee is arguing that title to the property should be quieted in the estate not under § 541(a)(1) or (2), but pursuant to § 541(a)(3) or (4).

Section 541(a)(4) includes as property of the estate "[a]ny interest in property preserved for the benefit of ... the estate under section ... 551 of this title." Section 551, in turn, provides that "[a]ny transfer avoided under section ... 544 ... is preserved for the benefit of the estate but

only with respect to property of the estate." Likewise, § 541(a)(3) includes as property of the estate "[a]ny interest in property that the trustee recovers under section ... 550." Section 550 provides that the trustee may recover interests in property to the extent that they are avoided under § 544. Therefore, even if the defendants' argument that § 541(d) is an express limitation on the trustee's avoiding powers is correct, § 541(d) by its express terms would not apply to this case.

Finally, the court turns to the defendants' argument itself to consider the relative roles of § 544(a)(3) and § 541(d). In support of their position, the defendants rely on dicta of two cases. In *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 2313, n. 8, 10, 76 L.Ed.2d 515 (1983) (emphasis added), the Supreme Court stated:

> The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.
>
> . . . .
>
> We do not now decide the outer boundaries of the bankruptcy estate. *We note only that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.*

The Supreme Court was not dealing with the interplay between § 544 and § 541; and there is no indication in *Whiting Pools* that the Court had in mind an *unrecorded* interest held in trust. In the present case, had the trust interest been of public record, the foregoing statement of the Court would accurately describe the operation of § 541(d).

The other dictum relied on by the defendants is found in *In re Quality Holstein Leasing,* 752 F.2d 1009, 1013–14 (5th Cir. 1985), wherein the court stated:

> As a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to

property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own. Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings.

(footnotes omitted). The court in that case dealt with a version of § 541(d) prior to its amendment in 1984. At that time, the scope of § 541(d) arguably extended to all of § 541(a). In response to cases like *Quality Holstein,* Congress in 1984 amended the language of § 541(d), limiting its scope to § 541(a)(1) and (2), as noted above. Therefore, the analysis of *Quality Holstein* is no longer consistent with the language of the Bankruptcy Code.

The court believes the proper analysis concerning § 541(d) and § 544 is set forth in *In re Great Plains Western Ranch Co.,* 38 B.R. 899 (Bankr.C.D.Cal.1984). The court there noted that to limit property of the estate to the prepetition property rights of the debtor is "only a partial analysis." *Id.* at 903. The court correctly observed that the concept of property of the estate has been expanded to include rights of creditors and the rights and powers of a bona fide purchaser:

> The strong-arm clause may be read as relying on the principle of ostensible ownership—the principle that, other things being equal, what the creditor sees ought to be what the creditor gets. There seem to be at least two important reasons why the idea of ostensible ownership bulks so large in bankruptcy law. First, it helps to police against fraud on the part of debtors—fraud that may occur with or without the collusion of creditors. Secondly, quite apart from any imputation of fraud, it helps to permit the kind of reliance said to be essential to a dynamic commercial economy.
>
> . . . .
>
> And that is why Section 541 does not end the inquiry in this case. Even conceding that the property rights of the estate are derivative from the property

rights of the debtor, still the trustee enjoys additional powers quite independent of his powers under Section 541, and in no way derivative from the debtor's rights at state law. Failure to consider Section 544 together with Section 541 may lead to misleading generalizations and sometimes to unsound results....

*Id.* at 904–05 (citations omitted).

The defendants argue that to so construe § 541(d) makes it surplusage. The court cannot agree. Had the Partnership's interest been of public record, § 541(d) would operate to limit property of the estate to bare legal title. Since it was not, § 544(a)(3) operates to cut off the Partnership's unrecorded equitable interest.

*Principles of Equity.*

Finally, the Partnership argues that it would be inequitable to allow the trustee to avoid the Partnership's interest and create a beneficial interest in Granada which never existed and which Granada did not assert. Although the result may seem inequitable from the Partnership's standpoint and that of Keiter which took a conveyance from the Partnership, it is not inequitable as a legal policy and to creditors generally. As noted in *Great Plains,* 38 B.R. at 904–05, the strong-arm powers are designed to avoid fraud and to allow creditors to rely on record title. Creditors who extend credit to the debtor in reliance on record title would be unwilling to do so if their position could be eroded by secret liens and unrecorded equitable interests. The fact that Granada is willing to acknowledge the existence of an unrecorded interest is unavailing. Even in this case, there is an allegation that the Bodreros and Scherer & Horn relied on Granada's ownership in lending money to Granada. The court does not believe that its construction of § 544(a)(3) and § 541(d) is unfair or inequitable. Rather the court believes that such a construction is necessary to effectuate the stated policies of bankruptcy administration.

For the reasons set forth herein, the trustee's Motion for Summary Judgment is granted.