# CATHERINE R. TOLAND, Appellant, v. GEORGE L. COREY, and others, Respondents.

EQUITY.—UNRECORDED DEED.—NOTICE.—Actual occupancy of real estate is sufficient to put parties dealing with· the land, upon inquiry, and it is a fact that would put a prudent man upon inquiry and which would, if pursued, lead to actual knowledge. Such occupancy is actual notice under the Utah recording statute which requires actual notice.

ID.—ID.—POSSESSION CONSISTENT WITH RECORD.—Even if the possession held by the occupant is consistent with the title of the occupant as it appears upon the record, the possession is actual notice of any other claim of appellant than that of record, so that when one is in possession upon a record title showing a life estate with an unrecorded deed in fee, such possession is notice of the unrecorded deed in fee.

ID.—MISTAKE.—LAW AND FACT.—The rule that equity will not interfere to cancel a contract made through mistake of law applies to a mistake as to the general law, not to a case where a party is mistaken as to the effect of existing circumstances in relation to his private rights, and in a case where appellant was a woman unacquainted with business not at arm's length with respondents, who were business men, aided by legal counsel, who misrepresented matters to her, and she under the mistaken belief that her premises were subject to certain mortgages, and she was without remedy, signed a deed for the property under protest and acknowledged it unwillingly, held that this deed equity would relieve against.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

Mr. Thomas Maloney for the appellant.

Mr. James N. Kimball with Mr. Ogden Hiles of counsel for the respondent.

The respondents had no actual notice of the unrecorded deeds. Actual notice is required by our statute. Possession by itself is simply constructive notice. The

statute of Utah recognizes no constructive notice outside of the record. Pomeroy Eq. Juris., Secs. 614, 615, 616 and 664 and cases cited. The possession of appellant was perfectly consistent with the record, which controls all other kinds of constructive notice. *Smith* v. *Yule*, 31 Cal., 180. The appellant is estopped because by executing the first mortgage to Doon and joining therein with Crowford, she held out to Doon that the record title was the true title.

BLACKBURN, J.:

This action is brought by the appellant for the cancellation of a deed to the respondents to a part of a lot in Ogden City, Utah, on the ground of fraud and inadequacy of consideration. It appears by the complaint and answer that the appellant owned a life estate in the premises, and her son, Isaac A. Crowford, owned the remainder; that he conveyed his interest to William Toland, the husband of the appellant, and he conveyed the same to her, but these deeds were not put upon record until the mortgages hereinafter mentioned were given and recorded, but they were made and delivered prior to the giving of these mortgages. It further appears that the said Crowford and appellant had given a mortgage on these premises to one Doon for $350; and after that, without the knowledge of appellant, and after she acquired the fee in the premises, Crowford, without her knowledge or consent, gave two other mortgages on the premises to said Doon to secure, separately, $150 and $117.75; and after that, Crowford, without appellant's knowledge, gave two other mortgages on the premises to the respondents, to secure debts due them from him. All these mortgages were duly recorded, and prior to the record of the deeds conveying the fee in the premises to the appellant. On the tenth day of August, 1885, Doon brought suit to foreclose his three mortgages against the appellant, and made the respondents parties; and, before judgment, appellant, to pay off the mortgages, and for no additional consideration, made the deed this action seeks to have set aside. The whole amount called for by the mortgages was $1,236.60. The allegations of

the complaint, which are denied by the answer, are to the effect that the mortgages given to Doon, except the one for $350, were given with notice of appellant's full owner-ship of the premises, and Crowford had no interest what-ever to incumber, and that the mortgages to respondents were taken with like notice; that the deed to respondents this action seeks to set aside was obtained by misrepre-sentation and other improper conduct by the respondents, and others associated with them in the transaction; that appellant was poor, in bad health, and without friendly advice, and thus was forced to sign the deed against her will; that the consideration was grossly inadequate; and that the deed was not voluntarily acknowledged, and not delivered on her authority, or by her.

The first question is, did Doon and the respondents have actual notice of the deed of Crowford to Toland, and Toland to appellant, at the time of making these mort-gages by Crowford, these deeds being unrecorded? The appellant was in the possession of the premises, occupy-ing them as a home, and this fact was well known to re-spondents and the agent of Doon, and it is not pretended that Doon or the respondents had ever heard of the deeds by which appellant claimed title; but the contention of counsel is that appellant's exclusive and notorious pos-session of the premises was actual notice to Doon and the respondents of her title. Our statute requires actual notice, and constructive notice is not sufficient. The statute is as follows: "That every conveyance of real estate and every instrument of writing, setting forth an agreement to convey any real estate, or whereby any real estate may be affected, proved, acknowledged and certified in the manner prescribed by this act to operate as notice to third persons, shall be recorded in the office of the re-corder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such record, and to all other persons who have had *actual* notice." Sec. 2611, 2 Comp. Laws 1888, p. 99. The demands of the statute are answered if a party dealing with the land has information of a fact or facts that would put a prudent man upon inquiry, and which would, if pur-

sued, lead to actual knowledge of the state of the title; and this is actual notice. 2 Pom. Eq. Jur., Secs. 597, 598, *et seq.* The appellant was in the actual occupancy of the premises, and actual occupancy is enough to put parties dealing with the premies upon inquiry. Id. Sec. 616, note 3, and Sec. 617. But the contention of the respondents is that the possession of the appellant was consistent with the title shown by the record, and therefore the mortgagees were under no obligation to look beyond the record, and were authorized to consider her possession as under her life-estate only. On this question the authorities are both ways. Id. Sec. 616, note 3, and Sec. 617. We think the better doctrine is that an occupant's possession is actual notice of his title, and all persons with notice of such possession must at their peril take notice of his full title in the premises, no difference what the record shows. Until the recording statutes were enacted, possession was notice of ownership, and a conveyance made by a party out of possession was void. The purpose of these statutes was not to change the rule that possession was evidence of title and notice to all the world of ownership, but to afford the means of preserving the chain of title, and give notice of the ownership of unoccupied lands. It would be an unwarranted application of the recording acts to say that they destroy the effect of occupancy as notice and evidence of ownership. We think, therefore, that a person at his peril deals with or purchases real estate of one, in the possession of another, although said possession may be consistent with the record title. It is easy to find out the real situation by inquiry of the party in possession, and it is his duty to do so. The conclusion, therefore, is that none of these mortgages, except the one for $350, were liens upon the premises of appellant.

It is also contended by respondents that appellant, well knowing these things, assumed these mortgages, and paid them off, and settled the foreclosure suit with her eyes open, by making the conveyance she now seeks to have canceled; that if she acted under a mistake of law, and not of fact, she is bound by it; that parties are bound to know the law, and a court of equity will not interfere to cancel a

contract made under a mistake of law. This is true as a general proposition, but it is only applicable when the mistake is as to the general law, not to a case where a party is mistaken as to the effect of existing circumstances in relation to his private rights. Id. Secs. 841–843, and notes. This case comes within the latter rule. The appellant made the deed under the mistaken belief that her premises were subject to these several mortgages, and that she had no remedy but to pay them off, or lose her land, life-estate and home, and be turned out of doors, and by entering into this contract; and respondent, taking advantage of this mistake, procured the deed; and this is the character of mistake that equity will relieve against.

Again, appellant was not at arms-length with respondents. She was a woman not acquainted with the rules of business; was weak and nervous, and troubled because of the situation. The respondents were business men, aided by legal counsel, anxious to get their debt paid; and the agent of Doon was a lawyer, and pressing to get Doon's money. The respondents and Nelson many times visited appellant, and urged her to settle and pay these mortgages, telling her, in substance, that her deeds were not worth the paper they were written upon; that her property was liable; and that unless she paid them they would be foreclosed, and she would lose her home, life-estate, and all; pressed in this manner and worried by her helpless condition, and misled by the representations of the respondents and those acting with them, she yielded and made the deed. It is true, she had a friend, or pretended friend, to advise her; but he was stupidly ignorant, or was in the interest of the other party, for he counseled with them, and advised her to do what they wanted, and so clearly against her interest that he must have acted in concert with them. When she signed the deed, she did it under strong protest, and she said, in making her acknowledgment, she did not do it voluntarily and willingly; that she was forced to do it. Four men were present for and in the interest of the respondents, and her pretended friend, acting also in their interest. She was alone; no one to utter a word in her behalf; her pretended friend acting

against her. In this situation, and influenced by the statement of all these men that 'to make the deed and cancel the debt was altogether the best thing she could do, and this in face of the fact, as the uncontradicted evidence shows, she was parting with the property at less than half of its value, she executed the deed. Also, she labored under the impression that she could not sell the premises with these mortgages outstanding. Why did not this lawyer or these business men, or some one of them, tell her they would assist her in selling the property for its full value, and deduct out of the purchase money the amount of the mortgages, and give her the balance? The only fair conclusion from the evidence is that these respondents, and the lawyer aiding them, misled this woman as to her legal rights, and overpersuaded her to deed away her own property for less than half its value, to pay debts that neither she nor her property were liable for. This may have been a sharp business transaction, but it was not to the honor of those who participated in it. Every case in equity is determined on its own peculiar facts; on its own merits. Precedent and authority are only useful to prompt the judicial conscience of the chancellor, and aid him in arriving at an equitable decision. Therefore we think this contract was unconscionable, and ought to be set aside.

The $350 is a lien upon the land, and the decree ought to be that the deed be canceled; that the appellant pay this mortgage and interest by a day to be named by the court, and in default of payment the premises be sold on the time and terms property is sold on the foreclosure of mortgages by the provisions of the statute, and out of the proceeds this mortgage and interest be paid, and the remainder be paid to appellant. This cause is reversed and remanded, with direction to the district court to have entered a decree in accordance with this opinion, and that the respondents pay the costs of this court and the costs of the court below up to date.

ZANE, C. J., and ANDERSON, J., concurred.