[Civ. No. 3267. First Appellate District, Division Two.—April 7, 1920.]

ETHEL D. BERRY, etc., Appellant, v. L. COHN et al., Respondents.

[1] ADVERSE POSSESSION—USE OF UNINCLOSED LAND FOR GRAZING.—The exclusive use of uninclosed land for grazing during the grazing season may constitute adverse possession.

[2] ID.—ACTION TO QUIET TITLE—EXCLUSIVE AND OPEN POSSESSION—EVIDENCE.—In this action to quiet title to certain uninclosed land, the evidence as to the use of the land by defendants' lessee during a portion of each year for the statutory period of years, coupled with the testimony of such lessee, who lived on the adjoining land, that the land in controversy was not occupied by anyone else during the period it was not in use by him, was sufficient to support the finding of the trial court that the defendants had maintained an exclusive and open possession for the statutory period.

[3] ID.—AUTHORITY OF BROTHER TO ACT AS AGENT—EVIDENCE.—In such action, the evidence having shown that the land was purchased at a tax sale by one of the defendants for the other defendant, a brother, that the former was the general agent to transact all kinds of business for the latter in the county, that as such agent he rented the property for the latter and paid all taxes on the property from the time of its purchase at the tax sale until the latter conveyed the property to him, such evidence, taken in connection with the ratification contained in the deed and the inferences which could properly be drawn from the entire evidence, was sufficient to justify the conclusion of the trial court that the defendant to whom the property was conveyed was authorized to represent his brother to the extent that adverse possession might be acquired through such agency.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon. Judge. Affirmed.

The facts are stated in the opinion of the court.

Everts & Ewing, M. G. Gallaher and Wm. E. Simpson for Appellant.

Kaye & Siemon for Respondents.

NOURSE, J.—Plaintiff appeals from a judgment rendered against her in an action to quiet title to real property in Kern County. The defenses relied upon by defendants were that title had been acquired, first, by tax deed to L. Cohn in August, 1904; and, second, by adverse possession under color of title. On the trial it was stipulated that plaintiff was the owner and in possession of the property at the time of the tax sale, and that she had not divested herself of her interest or title therein by any conveyance executed since that date. The trial court found that the tax deed under which defendants claimed title was void for the reason that the property was sold to the state and thereafter by the state to L. Cohn for a less amount in each instance than provided by law. The judgment quieting title in C. Cohn was based upon the second defense, which is the only one to be considered upon this appeal.

On August 13, 1904, the tax collector of Kern County executed a deed of the property involved in this action to defendant L. Cohn. In May, 1914, L. Cohn, by quitclaim deed, conveyed to defendant C. Cohn. The affairs of L. Cohn with relation to the purchase and occupation of this land were conducted by C. Cohn, the latter claiming to have acted as agent for the former.

Appellant contends that the judgment based upon the conclusion of the trial court that title to the land in question is vested in C. Cohn by reason of adverse possession is erroneous because: First, the evidence does not sustain the finding that the possession of C. Cohn was hostile, exclusive, continuous, and uninterrupted; and, second, there is no showing that the acts of C. Cohn claimed to have been done by him as the agent of L. Cohn, and so relied upon as constituting adverse possession by L. Cohn, were done with the knowledge or consent of L. Cohn or under any authority to perform those acts.

All taxes were paid by C. Cohn from the date of the tax deed to L. Cohn to the commencement of this action on October 5, 1917. The land was not personally occupied by either of the Cohns, but was rented to other parties by C. Cohn on behalf of L. Cohn prior to the conveyance of 1914 and thereafter by C. Cohn in his own behalf. C. Cohn testified that prior to 1907 or 1908 he rented the land to one John Maio, who did not himself occupy it, he being in the

business of re-renting to others for sheep-grazing pur-
poses. There is no evidence to indicate the date it was so
rented to him, the length of the lease, or the use to which it
was put during that period. Maio's tenancy need be given
no further consideration, as there can be no doubt that the
evidence offered with regard to it failed to meet the require-
ments for adverse possession. In 1908 C. Cohn rented the
land to J. B. Raymond. From that time until the trial, to
which time his tenancy continued, the adverse possession of
the land by defendants is founded solely upon its occupancy
by Raymond. Occupation of the land by Raymond con-
sisted in its use for sheep-grazing purposes only. The land
was uninclosed and formed part of a large open tract.
Raymond testified that he rented the land from C. Cohn and
went there the first of January, 1908, remaining until April;
that some years he took sheep there in the summer for dry
feed which he had stored upon the land—"maybe a couple
of times every five or six years"—but in the ordinary years
he pastured his sheep upon the land as soon as the fall rains
started the green feed, and used all the feed that grew on
the land (pasturing one thousand five hundred or two thou-
sand sheep there for two or three months each year), and
that he then took his sheep and left the place entirely. He
also testified that he had five or six sections of land, includ-
ing the half section involved herein, upon which his sheep
grazed; that they were not impounded by a fence or in any
other way; and that two or three months covered the time
spent upon the entire tract and not the time spent upon
the Cohn half section alone. The evidence shows that each
year he had a sheep corral on this particular half section,
sometimes a tent for the herders, and that on some occa-
sions he left a man on it to guard the dry feed when he took
his sheep to other pastures. Raymond knew the boundaries
of the land in question and testified that during the time
he was on the land each year no other sheep grazed on it
and it was not used by anyone else for any purpose. The
witness Reynolds was produced by respondents and testified
that, so far as he was aware, no one else used the land dur-
ing Raymond's absence. His testimony developed the fact
that he lived with his family on a tract of land adjoining
the half section from 1910 to the date of the trial, and that,
though he was away from that vicinity during a portion of

the period referred to, he returned to his home two or three times each week and often remained for two weeks at a time.

The foregoing are the facts relied upon by respondents for the purpose of showing adverse possession. [1] The exclusive use of uninclosed land for grazing during the grazing season may constitute adverse possession. (*Webber* v. *Clarke,* 74 Cal. 11, 18, [15 Pac. 431].) There is no conflict in the evidence as to the use made by respondents. But the additional burden was on them to prove that the land was not occupied by anyone else during the nine or ten months each year it was admittedly not in use by them. (*Cory* v. *Hotchkiss,* 31 Cal. App. 443, 447, [160 Pac. 841]; *Saecker* v. *Cohn,* 180 Cal. 151, [179 Pac. 890].)

[2] In this respect respondents were required to prove a negative. No evidence of any character was offered by appellant even suggesting possession or user during any portion of the period of twenty years she had failed to pay any taxes upon the property. The witness Raymond did testify that during the period of his lease, 1908–18, no one else used or occupied the land during the pasturing season except his sublessee during the season of 1917. The witness Reynolds testified that, with the exception of the same sublessee, the land had not been occupied or used by anyone other than respondents' lessee for any other purpose since 1910. This witness lived on the land adjoining that in controversy and was, apparently, the one having the best knowledge of the occupancy of the land.

The evidence of adverse possession differs materially from that considered in *Cory* v. *Hotchkiss, supra,* and *Saecker* v. *Cohn, supra,* and brings the case squarely within the rule of *Webber* v. *Clarke, supra.* The evidence, though meager, is sufficient to support the finding of the trial court that respondent had maintained an exclusive and open possession for the statutory period.

[3] Appellant also argues that the evidence is insufficient to support the conclusion that C. Cohn was authorized to represent his brother to the extent that adverse possession might be acquired through such agency. But the evidence is that the land was purchased by C. Cohn in the name and on behalf of his brother; that C. Cohn was a general agent to transact all kinds of business for his brother in Kern County; that as such agent he rented this property for his

brother and paid all taxes on it for him since 1904 and until 1914, when the brother by deed conveyed the property to him. This testimony was received in evidence without objection and, taken with the ratification contained in the deed of the principal and the inferences which could properly be drawn from the entire evidence, was sufficient to support the finding.

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 3, 1920.

Angellotti, C. J., Shaw, J., Lawlor, J., Wilbur, J., Olney, J., and Sloane, J., concurred.