## ADAMS v. LAMICQ et al.

No. 7394. Decided September 8, 1950. (221 P. 2d 1037).

210

See 2 C. J. S., Adverse Possession, Sec. 48. Ousting of true owner to acquire title by adverse possession, 170 A. L. R. 882. See, also, 1 Am. Jur. 868.

*Dillman & Dillman,* Roosevelt, for appellant.

*Therald N. Jensen,* Price, for respondents.

WOLFE, Justice.

This action was commenced by the appellant to quiet title to an eighty acre tract of land in Duchesne County, Utah. The respondents counterclaimed seeking to have title to the realty quieted in themselves. From a judgment in favor of the respondents, the appellant prosecutes this appeal.

The appellant is the patentee of the land in question and claims title under the patent. In 1925 he failed to pay the taxes which were levied against the property and it went to tax sale. The land was not redeemed within four years thereafter and consequently on May 12, 1930, an auditor's tax deed to the premises was issued to Duchesne County.

In the summer of 1937 the County Commission of Duchesne County leased the eighty acres, along with other adjoining lands to which the County claimed title under auditor's tax deeds, to one Eldon Brady for one year who used the lands as a winter range for sheep from November, 1937, to April, 1938. The following October the County Commission leased the property in question, together with other contiguous grazing lands, to the respondents for one year. The respondents likewise used the leased lands for a winter range for sheep. On December 5, 1939, they contracted to purchase from Duchesne County several thousand acres of land, including the eighty acre tract in dispute, and during the winter of 1939—1940 and the next succeeding four winters, the respondents pastured their sheep upon these lands. On December 29, 1943, they paid the last installment of the purchase price to the County and on March 1, 1944, the County executed quitclaim deeds to these properties to the respondents. No taxes were levied against the eighty acre tract from 1936 to 1940, but in 1941, 1942, and 1943, the respondents paid taxes on that property in proportion to their equitable interest in the tract under their purchase contract.

In their counterclaim, the respondents claimed title to the land in dispute under their quitclaim deed from the County and by virtue of seven years' adverse posession. The lower court found that because of certain defects in the tax sale procedure, the County did not acquire title to the eighty acres by the auditor's tax deed, and hence the quitclaim deed from the County to the respondents was ineffective as a conveyance of title. However, the court found that the respondents and their predecessor in possession, Duchesne County, had been in open, hostile, exclusive and continuous possession of the land in question for over seven years prior to the commencement of this action on March 5, 1945; that they had paid all the taxes which had been levied against the property during that period of

time; and that consequently their adverse possession had ripened into title.

The evidence establishes that the eighty acre tract in question consisted of unbroken and unimproved brush lands suitable only for grazing, with the exception of an estimated fifteen to thirty-five acres which had been cleared and were cultivated by the appellant during the summer months. The property was uninclosed, althought there was fencing along part of one end of the tract. It appears that both Brady and the respondents during the winter grazed all of the eighty acres—the brush land and the cultivated acreage from which the crops had been harvested. They were actually upon the lands which they leased from the County, including the tract here in question, for about five to six months each year, entering thereon in November and remaining until April, at which time they moved their sheep onto higher grazing lands in Colorado for the summer and early autumn. The respondents did not leave anyone upon or in charge of the eighty acres during the summer months while they were away. However, as has been mentioned, every summer since 1925 the appellant raised and harvested crops on that part of the tract which had been cleared of brush and could be cultivated.

Contrary to the appellant's contention the occupancy and possession of the unbroken brush land embraced within the eighty acres by the County and later by the respondents was in law a continuous occupancy despite the fact that neither Brady nor the respondents grazed or made any use of those lands during approximately six months of the year. Both the respondents and their predecessor in possession, Duchesne County, claimed title to the eighty acre tract by virtue of written instruments. The County claimed under its auditor's tax deed and the respondents claimed under their quitclaim deed from the County. Sec. 104—2—9, Utah Code Annotated 1943, provides:

"For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

"(1)   *   *   *

"(2)   *   *   *

"(3)   Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, *or for pasturage,* or for the ordinary use of the occupant." (Italics added.)

In *Kellogg* v. *Huffman,* 137 Cal. App. 278, 30 P. 2d 593, it was held under Sec. 323, subd. 3, Cal. Code Civ. Proc., which is identical to Section 104—2—9, subd. 3, quoted above, that pasturing during the entire grazing season of each year during which feed is available, if done to the exclusion of others, is a sufficient use and occupation of land, which is reasonably fit for grazing purposes only, to constitute the occupation and possession necessary to establish title by adverse possession. *Webber* v. *Clarke,* 74 Cal. 11, 15 P. 431, 435; *Berry* v. *Cohn,* 47 Cal. App. 19, 189 P. 1044. In *Webber* v. *Clarke,* supra, a leading case on the subject in California, the court stated:

"The question is whether the pasturage must continue throughout the whole year. As stated above, the defendant's pasturage was only during the grazing season, that is, from February to July, the land during the balance of the year being 'not pasturable.' We think, however, that this was sufficient, there being no one on the land meanwhile. It is a settled rule with reference to cases of this character that it is sufficient if   *   *   * the dominion and control is 'by appropriate use and according to the particular locality and quality of the property.'   *   *   * Now, we think that pasturing during the pasturing season is 'appropriate use according to the particular locality and quality of the property.' To pasture the land when it was 'not pasturable' would not only be not an appropriate use, but an impractical one. In the case of cultivation, there is an interval of several months between the harvesting of one crop and the preparation of the soil for another. And there will be just as much sense in holding that the interval destroyed the continuity of possession in the one case as in the other."

See the cases collected in the annotation in 170 A.L.R. 848.

Thus we conclude that the respondents and their predecessor in possession, Duchesne County, had continuously

claimed, occupied, and used the unbroken brush lands in dispute for at least seven years prior to the commencement of this action on March 5, 1945. The County initiated possession in November of 1937 by placing its lessee, Brady, upon the lands. At the expiration of Brady's term, the respondents entered upon the lands under a one year lease with the County, and after obtaining a contract to purchase and later a quitclaim deed, they remained there until the commencement of this action. In *Bozievich* v. *Slechta,* 109 Utah 373, 166 P. 2d 239, this court held that the act of a county in placing tenants upon property to which the county claimed title thereto under a auditor's tax deed constituted a possession adverse to the record title owner even though it was later revealed that the auditor's tax deed was void because of defects in the tax sale procedure.

As to whether there has been seven years' adverse possession of the cultivated area embraced within the eighty acre tract by the respondents and their predecessor in possession, Duchesne County, a more difficult question is presented. As has been seen, neither Brady nor the respondents grazed the eighty acres in question between April and November of each year. The appellant testified, and the lower court found as a fact, that he (the appellant) had raised and harvested crops every summer for the past twenty years on the cultivated land. John Lamicq, one of the respondents, estimated that in 1936 about fifteen acres were cultivated by the appellant, but testified that since that time additional acreage had been brought under cultivation by the appellant.

The respondents' claim of title to the cultivated area must fail because they have not established that their possession or their predecessor's possession was exclusive of possession by the appellant for seven years prior to the commencement of this action. To ripen into title, it is necessary that an adverse claimant's possession operate

as an ouster of the possession of the true owner. 1 Am. Jur. Sec. 142; *Strauss* v. *Canty*, 169 Cal. 101, 145 P. 1012. The use of the cultivated land by the County and the respondents as a pasture for sheep during the winter did not divest the appellant from possession. It would be a strange doctrine to require an owner in possession of uninclosed cultivated land to make use of it during the winter months when nothing could be raised thereon, or bear the risk of losing possession to a claimant who used the fields for pasturage between growing seasons. The rule that title to property may be acquired by adverse possession if it is grazed by an adverse claimant during the entire grazing season of each year is limited to lands which because of their character are reasonably suited for grazing purposes only and has not been extended by the courts to lands which can be cultivated during the non-grazing months of the year. See *Kellogg* v. *Huffman*, supra. In *Berry* v. *Cohn*, 47 Cal. App. 19, 189 P. 1044, the court held that persons claiming title to uninclosed land by adverse possession by reason of its use for grazing during the entire grazing season, have the burden of proving that the land was not occupied by anyone else during the part of each year when it was not in use by them.

It is true that in 1941 Lamicq gave the appellant permission to crop the cultivated land during the summer months. Assuming that the appellant's occupancy from that year forth was under the permission of the county and the respondents, there is no evidence that the use of that land by the appellant prior to 1941 was permissive. We cannot presume that the use prior to 1941 was under the premission of the county because the appellant had not at any time prior to 1941 been divested of possession but continued to cultivate the land as he had each summer since 1925 when his ownership and right to possession were unquestioned. The fact that the respondents did not actually know that the appellant claimed title to the property

during the seven year period is immaterial. The appellant was in possession under the patent to the property. He had not been ousted of possession and his use of the land was open and visible. Under these facts the county and respondents are charged with notice of his claim of title. The fact that the appellant once offered to give five loads of hay to the respondents for the eighty acres does not aid the respondents' case inasmuch as it does not appear that this offer was made prior to 1941.

The trial court held that the growing of crops by the appellant upon the cultivated land did not preclude the defendants' adverse possession from ripening into title because the appellant's use did not in any way interfere with the winter grazing of sheep. Admitting that the appellant's crops were harvested each year before the sheep entered upon the land for the winter and conceding that fields from which crops have been harvested constitute excellent, if not preferable pasturage, these facts do not justify the trial court's holding. In his memorandum of decision it appears that the trial judge relied upon *Bingham Livery & Transfer Co.* v. *McDonald,* 37 Utah 457, 110 P. 56, as authority for his decision in this regard. In that case the defendant, an adverse claimant, used the lot in question as a yard for his blacksmith shop. In it he kept wagons, sleighs, and other equipment upon which he worked, as well as stacks of fuel which he burned. The plaintiff, claiming under the patent to the lot, occasionally hauled hay to and manure from its livery stable on an adjoining lot across the lot in question. This court held that under the circumstances the occasional driving over the lot by the defendant in going to and from its stable was in no sense an interference with and hence did not interrupt the continuity of the adverse claimant's possession. That case is readily distinguishable from the instant case. There the plaintiff had been ousted of possession and his infrequent crossing of the lot was correctly held not to have

broken the continuity of the defendant's adverse possession. In the case at bar the appellant has never been divested of possession and had continuously cultivated the land from at least 1925 to 1941 before his right thereto was ever challenged. Furthermore, the appellant's use cannot be characterized as "occasional," as was true in the McDonald case. The appellant used the land for about the same number of months each year that it was occupied by the respondents.

The appellant contends that the admission and exclusion of certain evidence by the lower court during the course of the trial below was erroneous. We have examined these alleged errors and are convinced that there was no prejudicial error committed. The admission of the ■ purchase contract between the respondents and Duchesne County was not erroneous merely because on the reverse side of the contract there was a record kept by the County Treasurer of the periodic payments of the purchase price made by the respondents. The contract was introduced by the respondents for the purpose of showing that on December 5, 1939, they had agreed to purchase the eighty acres in question from the county. The contract as originally made was not modified in any respect by these entries of payment.

The following excerpt from the minutes of the County Commission of Duchesne County on October 4, 1938, was introduced in evidence:

"Moved and seconded by County Commissioners that Mr. Lamicq in Meeker, Colorado, be written that upon payment of $150 he could move onto the County ground he wished to use."

Thereafter Lamicq was permitted to testify, over the appellant's objection, as to what land in particular the commission had reference to in the minutes. He testified that it was a tract of grazing land embracing the eighty acres in dispute. The admission of his testimony was not erro-

neous inasmuch as the minutes were indefinite and uncertain and parol evidence was necessary to make them certain in this regard. Lamicq, being present at the commission meeting, was competent to supply this supplemental evidence.

On cross-examination of the witness, Lamicq, counsel for the appellant asked him whether the appellant was in possession of the cultivated land during the summer of 1939. The court thereupon sustained an objection to that question made by the respondents on the ground that whether the appellant was in possession at that time was a conclusion of law and could not be properly asked a witness. While the word "possession" has at times a definite meaning in law which the witness would not be assumed to know, it is doubtful that counsel used that word in his question in its strict legal sense. It is more likely that he meant to ascertain whether the appellant had been physically present upon or had made use of the land during the summer of 1939, and therefore had had physical possession by those means. Using the word "possession" in the latter sense, the question did not call for a conclusion of law and the witness should have been allowed to answer the question. However, it is evident that the appellant was not prejudiced thereby in view of the fact that immediately following the sustention of the objection to the question and the ruling of the court thereon, counsel for the appellant asked the witness, and he answered, whether he knew if the appellant had cultivated the land that summer. Thus in substance both questions demanded the same answer and since the witness answered the second question, the court's refusal to allow him to answer the first was not prejudicial.

Having then decided that the lower court did not err in quieting title to the unbroken brush lands embraced within the eighty acre tract in the respondents, but that it erred in

quieting title to the cultivated land contained therein in them, it follows that the judgment below must be reversed and the case remanded to the district court to ascertain what acreage was under cultivation in November of 1944 when the respondents' title to the unbroken lands became perfected by reason of seven years' adverse possession of the same, and to enter judgment accordingly. However, as a condition precedent to quieting title to the cultivated land in the appellant, the district court, in accordance with the general equity rule prevailing in this state, should require the appellant to reimburse the respondents for the taxes on the cultivated area which they have paid the county. See *Oregon Short Line R. Co.* v. *Hollock,* 41 Utah 378, 126 P. 394; *Bolognese* v. *Anderson,* 87 Utah 455, 49 P. 2d 1034; and *Crystal Lime & Cement Co.* v. *Robbins,* 116 Utah 314; 209 P. 2d 739.

It is so ordered. Each party to bear its own costs.

PRATT, C. J., and WADE, LATIMER, and McDONOUGH, JJ., concur.