Verl B. JOHNSON and Mary G. Johnson, his wife, Plaintiffs and Appellants,

v.

Milton S. BELL and Dorene Bell, his wife; Murray First Thrift & Loan Company, a corporation, Kay M. Lewis, Trustee; and Wesley M. Anderson, Defendants and Respondents. (Two cases)

Nos. 17582, 17455.

Supreme Court of Utah.

May 26, 1983.

E.J. Skeen, Salt Lake City, for plaintiffs and appellants.

M. David Eckersley, James R. Black, Kay M. Lewis, Steven F. Alder, Salt Lake City, for defendants and respondents.

HOWE, Justice:

Plaintiffs Verl B. Johnson and Mary G. Johnson, his wife, brought this action against all defendants to quiet title to certain real property, or in the alternative, to recover damages against the defendants Milton S. Bell and Dorene Bell, his wife. After plaintiffs' presentation of evidence, their complaint was dismissed and they bring this appeal.

On October 8, 1966, the defendant Milton S. Bell, then a single man, entered into an installment contract to sell approximately 1,000 acres of land in Grantsville, Tooele County, Utah, to plaintiffs' predecessors in interest, Blaine Johnson and Frances N. Johnson, his wife; C. Glen Durfee and Dean R. Johnson. On that same day Bell executed and delivered to those buyers a quitclaim deed to an adjoining 80 acres. This quitclaim deed was not recorded until September 27, 1974.

On September 8, 1967, Verl B. Johnson, one of the plaintiffs and the father of Blaine Johnson and Dean R. Johnson, redeemed the 80 acres from a tax sale and

was issued a certificate of redemption by the Tooele County Treasurer. The certificate was marked "For Milton Bell." On September 25, 1968, the 1,000 acres covered by the contract, and not the 80 acres, was conveyed by warranty deed by Bell to the plaintiffs after they paid the principal balance owing on the contract. Subsequently, the original buyers under the real estate contract quitclaimed their interest in the 1,000 acre tract to plaintiffs.

On September 9, 1974, in order to secure a loan of $10,847 which they had obtained, Bell and his wife, Dorene, executed a trust deed on the 80 acres to Murray First Thrift & Loan. Murray First thereafter recorded the trust deed in the office of the Tooele County Recorder on September 11, 1974. This was approximately two weeks before the grantees of the 80 acres recorded their quitclaim deed which had been delivered to them by Bell on October 6, 1966. On July 12, 1975, Frances Powell, formerly Frances N. Johnson and ex-wife of Blaine Johnson, quitclaimed her interest in the 80 acres to Milton Bell. On May 16, 1976 all of the other grantees of the 80 acres quitclaimed their interest therein to the plaintiffs.

The plaintiffs filed suit on May 17, 1976 to quiet title to the 80 acres as against the Bells, Murray First, Kay M. Lewis, trustee under the deed of trust, and Wesley M. Anderson. Anderson had purchased the 80 acres from Murray First at a trustee's sale for the amount owing on Bells' note after they defaulted thereon. At the trial, after all plaintiffs' evidence was submitted, the trial court granted defendants' motion for dismissal of the case for failure of plaintiffs to establish a prima facie case.

Plaintiffs contend that the trial court erred in dismissing their action because they had made out a prima facie case that (1) Murray First had actual notice of their interest in the 80 acres at the time it recorded its trust deed even though they had not then recorded their quitclaim deed, and (2) they had possessed the land and paid taxes thereon for 7 consecutive years, thereby establishing title by adverse possession.

## I.

The assertion that Murray First had actual notice of plaintiffs' predecessors' interest in the 80 acres at the time it recorded its trust deed (even though they had not then recorded their quitclaim deed) involves consideration of U.C.A., 1953, § 57–1–6 which provides:

> Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, *but shall be valid and binding* between the parties thereto without such proofs, acknowledgment, certification or record, and *as to all other persons who have had actual notice*.... [Italics added.]

This statute was under examination by this Court in *Toland v. Corey,* 6 Utah 392, 24 P. 190 (1890), where we held that the "actual notice" required by § 57–1–6 was satisfied if a party dealing with the land had information of facts which would put a prudent man upon inquiry and which, if pursued, would lead to actual knowledge as to the state of the title. See a similar expression in *McGarry v. Thompson,* 114 Utah 442, 201 P.2d 288 (1948).

There is no evidence in the instant case that in September of 1974, when the trust deed was executed to Murray First and recorded, Murray First knew of the conveyance from Bell to plaintiffs' predecessors in title. Nor is there any evidence that there was any activity on the property at that time which would have reasonably alerted it to the claims of those predecessors and which would have required its further investigation. There was no evidence that there were any cattle upon the property at that time. Plaintiffs admitted that cattle grazed the land only seasonally and also that no one lived upon the property. The improvements to the property by the plaintiffs had been made in 1966. These facts are significantly different from those found in *Toland v. Corey,* supra, where the person who claimed that there was actual notice lived in a home on the property, and also differs from those in *Neponset Land and Livestock v. Dixon,* 10 Utah 334, 37 P. 573 (1894) where again there was a home on the property and crops had been harvested from the property.

Whether Murray First had actual notice was a question of fact which the plaintiffs had the burden of proving. The trial court did not err in ruling that the plaintiffs had failed to establish a prima facie case that Murray First had "actual notice" as required by § 57–1–6, and the cases interpreting that statute which have been cited and discussed above.

## II.

Turning now to a consideration of plaintiffs' claim that they acquired title by adverse possession, the trial court at the close of the presentation of plaintiffs' evidence granted motions made by all defendants to dismiss plaintiffs' complaint. Following the trial, written orders of dismissal were submitted to and signed by the trial court. One order relates to the defendants Murray First and Kay Lewis; another to defendants Bell, and the third order relates to defendant Anderson. It is significant that all three orders of dismissal recite that they are made on motion of defendants to dismiss plaintiffs' complaint because of their "failure to establish a prima facie case." Following entry of those orders, plaintiffs' counsel moved to alter, amend or vacate them on the ground that the orders were not supported by findings of fact and conclusions of law as required by Rule 41(b), Utah Rules of Civil Procedure. In response to the filing of those motions, the defendants Murray First and Kay Lewis and the defendants Bell submitted to the trial court and the trial court signed two sets of findings of fact and conclusions of law. In each of these sets it was again recited that the plaintiffs' complaint was dismissed for their "failure to establish a prima facie case

against said defendants" or "to establish a prima facie entitlement to relief."

Rule 41(b), supra, provides in part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). . . .

We pointed out in *Winegar v. Slim Olson, Inc.,* 122 Utah 487, 252 P.2d 205 (1953) that this rule applies only in non-jury cases where the court sits as the fact finder. In that case we quoted approvingly from *United States v. United States Gypsum Co.,* D.C., 67 F.Supp. 397, 418 (1946) where the rule was explained and justified in the following words:

When a court sitting without a jury has heard all of plaintiff's evidence, it is appropriate that the court shall then determine whether or not the plaintiff has convincingly shown a right to relief. It is not reasonable to require a judge, on motion to dismiss under Rule 41(b), to determine merely whether there is a *prima facie* case, such as in a jury trial should go to the jury, when there is no jury—to determine merely whether there is a *prima facie* case sufficient for the consideration of a trier of the facts *when he is himself the trier of the facts.* To apply the jury trial practice in non-jury proceedings would be to erect a requirement compelling a defendant to put on his case and the court to spend the time and incur the public expense of hearing it if the plaintiff had, according to jury trial concepts, made "a case for the jury," even though the judge had concluded that on the whole of the plaintiff's evi-

dence the plaintiff ought not to prevail. A plaintiff who has had full opportunity to put on his own case and has failed to convince the judge, as trier of the facts, of a right to relief, has no legal right under the due process clause of the Constitution, to hear the defendants' case, or to compel the court to hear it, merely because the plaintiff's case is a *prima facie* one in the jury trial sense of the term.

122 Utah at 492, 252 P.2d at 207. For a further discussion of the rule and its application, see *Lawrence v. Bamberger R.R. Co.,* 3 Utah 2d 247, 282 P.2d 335 (1955) and annotation at 55 A.L.R.3d 272 (1974), and cases cited therein.

Thus in the instant case the trial court sitting as finder of the facts was entitled at the end of the plaintiffs' presentation of evidence to weigh that evidence, and if it found it to be unbelievable or insufficient in some regard, to make a ruling on the merits of the evidence and dismiss the complaint. However, from our review of the findings of fact it does not appear that that was the basis of the trial court's dismissal since the crucial findings on possession and payment of taxes are favorable to the plaintiffs.

■ One of the sets of findings of fact entered by the court contains no findings relating to the plaintiffs' claim of title by adverse possession. The other set of findings contains findings that plaintiffs' predecessors in title used the property for grazing cattle, that in 1967 they fenced part of the property, repaired fences and plowed part of the property, and that the plaintiff, Verl B. Johnson, paid the taxes on the property. The finding of these facts by the court indicates that the plaintiffs did establish a prima facie case of title by adverse possession. Yet, in the conclusions of law the court concluded that the plaintiffs' claim of adverse possession should be dismissed for "plaintiffs' failure to prove a prima facie case" and plaintiffs' possession of the subject property was "not open and notorious to the extent required by law." These conclusions leave us in doubt as to the basis for the trial court's dismissal.

We held in *Adams v. Lamicq,* 118 Utah 209, 221 P.2d 1037 (1950) that title to land which is reasonably suited for grazing purposes only may be acquired by adverse possession if it is openly grazed by an adverse claimant during the entire grazing season. In that case we affirmed a decree quieting title to certain grazing land in an adverse claimant, even though the claimant was actually only upon the land for about five to six months each year when feed was available for his sheep. The other six months of each year no one was upon or in charge of the property.

The plaintiffs in the instant case made a similar showing of possession and use of the 80 acres by themselves and their predecessors. The trial court found as a fact that they grazed the land through 1974, a period of over eight consecutive years. In addition, plaintiffs testified that they paid the taxes for the years 1967 to 1976 when they commenced this action. The trial court found as a fact that the plaintiff "Verl Johnson paid the taxes on the subject property" although that finding did not specify for which years. However, since the plaintiffs' evidence was uncontroverted that they paid the taxes for the years 1967 to 1976, we must presume that the court's finding was meant to cover all of those years. The statement in the finding that the plaintiff Verl Johnson has a receipt showing that taxes were paid for Milton Bell is irrelevant. That statement relates only to the delinquent taxes for 1966 which were owing on the 80 acres when the plaintiffs' predecessors received their conveyance of that tract in 1966, and does not relate to the property taxes paid by the plaintiff from 1967 to 1976. Certainly plaintiffs established a prima facie case of adverse possession, U.C.A., 1953, § 78–12–9(3), and the trial court's conclusion otherwise was in error.

The conclusion of law made by the court that the plaintiffs' possession was "not open and notorious to the extent required by law" does not properly follow from the findings of fact made by the court as to plaintiffs' possession under our holding in *Adams v. Lamicq,* supra. We are therefore left with no alternative but to remand the case to the district court for retrial on plaintiffs' claim to title by adverse possession. Inasmuch as defendants Bell, Murray First and Kay M. Lewis have disclaimed any interest in the property, a retrial may involve only the defendant Anderson.

### III.

Lastly, the plaintiffs contend that the trial court erred in dismissing their claim for damages against the Bells. We find no error in this regard. The plaintiffs' only claim to the 80 acres was through a quitclaim deed which had been executed to them from some of Mr. Bell's grantees. Bell had quitclaimed the 80 acres in 1966 to 5 grantees, 4 of whom in 1976 quitclaimed their interest therein to the plaintiffs. Neither quitclaim deed carried any warranty of title. A grantee under a quitclaim deed acquires only the interest of his grantor "be that interest what it may." *Nix v. Tooele County,* 101 Utah 84, 118 P.2d 376 (1940). Plaintiffs clearly have no cause of action against the Bells based on any warranties contained in Bells' quitclaim deed.

Furthermore, the plaintiffs had no contractual relationship with the Bells and hence no contractual liability is present. It is not clear from the record what consideration, if any, was given by the original grantees to Mr. Bell for the 80 acres. If any cause of action for damages exists against Bell because of breach of some contractual duty, such cause of action would be owned by the original grantees and not by the plaintiffs. Plaintiffs urge that the 1966 conveyance from Bell was actually a conveyance to a family partnership, of which they were and are members. Nothing to that effect appears in the terms of the 1966 deed and plaintiffs did not allege any such facts in their complaint. In their complaint their claim to relief is based solely upon being successors in title to the grantees of the 1966 quitclaim deed from Bell. In view of these circumstances, the dismissal of the plaintiffs' claim for damages against the Bells was proper.

Affirmed in part, reversed in part, in accordance with this opinion, and remanded for a new trial on plaintiffs' claim of title by adverse possession against defendant Anderson. Parties to bear their own costs.

STEWART and OAKS, JJ., and DAVID B. DEE and J. ROBERT BULLOCK, District Judges, concur.

HALL, C.J., and DURHAM, J., do not participate herein.

DAVID B. DEE and J. ROBERT BULLOCK, District Judges, sat.