**William P. BOSWELL, d/b/a Rafter 'B' Ranch, Plaintiff,**

v.

**Gregg O. JASPERSON and United States of America through the Administrator of the Farmers Home Administration, United States Department of Agriculture, Defendant.**

**No. 2:99 CV 0680G.**

United States District Court, D. Utah, Central Division.

May 1, 2003.

Bradley E. Morris, Salt Lake City, UT, for Plaintiff.

William P. Boswell, Goshen, UT, pro se.

J. Angus Edwards, Jones, Waldo, Holbrook & McDonough, H. Michael Drake, Michael W. Homer, Clinton D. Jensen, Thomas B. Price, Paul C. Farr, William L. Nixon, Jill N. Parrish, Salt Lake City, UT, for Defendant.

Mary Lee Boswell, Pro se.

## MEMORANDUM DECISION, CONCLUSIONS OF LAW, AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the Court on Defendant Jasperson's Motion to Exclude Warranty Deed from Evidence and his Motion for Summary Judgment to which Defendant United States of America (hereinafter "Farmers Home Administration" or "FHA") has joined. The Court heard oral argument in November 2002, and permitted additional post hearing memoranda to be filed in December 2002, after which the motions were taken under advisement.

Now being fully advised, the Court renders its Memorandum Decision, Conclusions of Law, and Order for Judgment.

### FACTUAL BACKGROUND

The primary subject of this case concerns the ownership of real property in Goshen, Utah containing a feed yard.

On October 1, 1974, Marsden and Melva Larsen ("the Larsens") sold an 18–acre plot of land including a feed yard to plaintiff's father, Garth Boswell. The sale was pursuant to a Uniform Real Estate Contract ("UREC") and a Warranty Deed was executed by the Larsens naming Garth Boswell as grantee. In May 1976, Garth

Boswell obtained a loan for $120,000 from Zions First National Bank secured by a deed of trust on properties which included the feed yard. In March 1979, Garth Boswell obtained another loan for $100,000 from the Farmers Home Administration, again secured by a deed of trust on the same feed yard and properties. In August 1982, Garth Boswell filed a bankruptcy petition under Chapter 11 which listed the feed yard as part of his real property holdings.

Plaintiff alleges that in 1974, when he was thirteen years old, the original Warranty Deed held by the Larsens, which named his father Garth Boswell as grantee, was altered to substitute his name, William P. Boswell and his d/b/a Rafter 'B' Ranch, as grantees. Garth Boswell claims that a duplicate deed was changed and altered in 1980, naming his son and the d/b/a. However, neither Plaintiff nor his father assert that the lenders, defendant United States of America by and through Farmers Home Administration and Zions First National Bank, were ever given notice of such alleged changes or that the lenders ever consented to said alleged changes. Plaintiff recorded the altered deed in March 1983. The original deed naming Garth Boswell as grantee is missing, lost or otherwise unavailable. Title to the feed yard was conveyed to the United States of America (FHA) by the bankruptcy Trustee in Garth Boswell's bankruptcy on September 15, 1993. Thereafter, the property was sold and conveyed by FHA to defendant Gregg O. Jasperson on March 19, 1997.[1]

The 1974 UREC provided that in addition to a $5,000 down payment, Garth Boswell was to make "ten equal semi-annual

---

1. Since his purchase of the feed yard and more than 300 acres of adjoining land in 1997, Jasperson has paid taxes and made payments for the properties but has never grazed cattle or otherwise used the properties including the feed yard because of plaintiff's possession and claim of ownership.

payments of $2,970.96 each beginning April 1, 1975 and every six (6) months thereafter until paid." The UREC was properly signed by both parties, the Larsens and Garth Boswell. There is no mention of plaintiff William P. Boswell, and no mention of any intention to substitute plaintiff or any other person or entity as grantee of the properties in the place of Garth Boswell. Moreover, Garth Boswell's actions and deposition testimony subsequent to his purchase of the properties from the Larsens in 1974 are wholly consistent with his continuous claims of ownership and exercise of dominion and control.

Garth Boswell's bankruptcy filing on August 11, 1982 contains clear representations that he had title to the feed yard at that time: "Garth Boswell, has unrecorded Warranty Deed from vested fee simple owners, Marsden Larsen and Melva G. Larsen." [2]

In a deposition taken February 17, 1981, in the state court case of *Castle v. Boswell,* Civil No. 56–054, Garth Boswell testified as follows:

Q. "Who holds title to this feed yard?"

A. "*I do.*"

. . .

Q. "Do you have the deed?"

A. "*Yes.*"

. . .

Q. "Where is the deed at now?"

A. "*It's in my home.*"

(Def.'s Mot. to Exclude at 12–13, Ex. 8, p. 9, ln. 20–40) (emphasis added).

On December 15, 1999, Garth Boswell testified by way of deposition in this case

that the aforesaid statements made in 1981 were true. In answer to the following query referring to his prior testimony: "Was all of that testimony true?", Garth Boswell said:

A. *Well, it must have been true. That's what I stated, yeah.*

(Garth Boswell dep. at 138) (emphasis added). In the same deposition, Garth Boswell testified under oath that he never made or requested any changes to the deed:

Q. Have you made any changes to this deed from the time you first received it?

A. *I have never made any changes to the deed.*

Q. Have you requested any changes to be made to this deed?

A. *None that I remember.*

(Garth Boswell dep. at 25) (emphasis added). Finally, Garth Boswell testified that the deed in question must have been delivered on some unspecified date either to himself or to the Plaintiff:

Q. Can you tell me if you or [Plaintiff] ever received delivery of this particular deed?

A. *Well, I'm sure one of us did. One of us recorded it, I don't know which one. But one of us recorded it, so we had to have it to record it.*

(*Id.*) (emphasis added).

Notwithstanding the foregoing statements contained in two separate depositions and a sworn bankruptcy schedule, in an affidavit dated February 28, 2000 Garth Boswell said that the Warranty Deed

---

**2.** The following declaration was filed in the United States Bankruptcy Court, District of Utah on September 3, 1982 and signed by Garth and Mary Boswell:

We, William Garth Boswell and Mary Lee Boswell, certify under penalty of perjury that I have read the foregoing schedules,

. . . and that they are true and correct to the best of my knowledge, information, and belief.

*See also* Def.'s Prior Mot. for S.J. at 2–3, ¶ 9, Exhibit A (attaching bankruptcy Schedule B— Statement of all Property of Debtor).

signed on the same day in October 1974 as the UREC "was never released or delivered to me," and he disavowed any ownership of the properties after 1980, stating in the same Affidavit:

> [i]n 1980, by agreement between the Larsens and me, my interest in the property covered by the [UREC] was terminated, and the grantee on the Warranty Deed was changed to be "RAFTER 'B' RANCH,['"] c/o William P. Boswell (William P. Boswell is my son and Rafter "B" Ranch was his DBA.). The Warranty Deed, as changed, was delivered to William P. Boswell in 1980.

(Garth Boswell Aff. at 4, ¶ 15). Garth Boswell further averred in the affidavit that "[a]t no time after 1980 have I had any legal or equitable title to or interest in the [feed yard]," and said that the inclusion of the feed yard in his bankruptcy estate was an "inadvertent mistake." *Id.* at ¶ 16–17.

The original property owner, Marsden Larsen, had no recollection of an "agreement" or arrangement to substitute the name of plaintiff William P. Boswell instead of Garth Boswell as grantee in the deed, and testified as follows in his deposition: "I don't remember any of those things. I know there was a lot of shuffling around. And you've got to know Garth Boswell and get mixed up with him to understand." (Marsden dep. At 24).

In his Complaint in this action plaintiff William P. Boswell alleged that he "received the Property by Warranty Deed from Marsden L. Larsen and Melva G. Larsen in 1974...." (Compl. at 2, ¶ 2). However in his deposition testimony plaintiff William P. Boswell testified, "I don't— I don't ever remember seeing the original." When asked if he was aware of any alterations to the deed, plaintiff answered, "[n]o I'm not."

All facts material to determination of Garth Boswell's interest or alleged lack of interest in the subject property are before the Court, as are all facts which bear upon the altered deed which names plaintiff William P. Boswell and his d/b/a as grantee. All facts now before the court are either not in dispute, not material to the dispositive issue in this case, or are not admissible in evidence. As is set forth hereinafter, the assertions by Garth Boswell in the affidavit referred to above are stricken pursuant to defendants' Motion to Strike, as well as the Court's initiative.

## ANALYSIS

Defendant Jasperson seeks to exclude from evidence the altered deed which names plaintiff William P. Boswell as grantee, and moves for summary judgment.

## I. DEFENDANT'S MOTION TO EXCLUDE WARRANTY DEED FROM EVIDENCE.

### A. Garth Boswell's Legal and/or Equitable Interest in the Properties on the Date of Bankruptcy Filing

The central and dispositive issue in this case is whether Garth Boswell had legal and/or equitable title and interest in the feed yard in August 1982. Other fact issues are not material or are not admissible as evidence.

The Bankruptcy Code at 11 U.S.C. § 541(a)(1) provides that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Accordingly, if Garth Boswell had legal or equitable interest in the feed yard in August 1982, when he filed for bankruptcy, the feed yard was included as a part of his bankruptcy estate by operation of law. The Bankruptcy Code makes it clear that a Trustee in Bankruptcy is treated as a bona fide purchaser of properties owned

by persons who file for bankruptcy, with perfection attaching at the time of the bankruptcy filing. *See* 11 U.S.C. § 544(a)(3). In a race-notice jurisdiction such as Utah, "a bona fide purchaser who perfects his interest takes free of any prior unrecorded interest in the real property." *See In re Granada, Inc.,* 92 B.R. 501, 503–4 (Bankr.D.Utah 1988) (applying Utah Code Ann. § 57–3–3).

This Court finds and rules that Garth Boswell had legal and equitable interest and title to the feed yard on and prior to his bankruptcy filing in 1982. His self serving, contradictory statements fall far short of showing that he had no legal or equitable interest in the feed yard and related properties at the time of his bankruptcy filing. This is manifest from Garth Boswell's own prior deposition testimony, his acts and conduct in asserting control, dominion, and title to the feed yard at all relevant times, including his conveyance of deeds of trust to the feed yard on two separate occasions, and his sworn filings in the Garth Boswell bankruptcy proceeding. Accordingly, the Trustee in bankruptcy was free to convey such interest and title in the feed yard to defendant the Farmers Home Administration as purchaser. In turn, the FHA and the Trustee in Bankruptcy were free to convey the said property to defendant Jasperson as purchaser regardless of Plaintiff's claim of ownership based upon his recording the altered deed in 1983, well after the bankruptcy filing.

### B.  Utah Code Annotated § 78–25–17

■ Defendant alleges that the deed upon which Plaintiff bases his ownership to the feed yard is an inadmissible alteration of the original. Defendant relies on Utah Code Annotated § 78–25–17 which states:

> The party producing as genuine a writing which has been altered, or *appears to have been altered after its execution* in a part material to the question in dispute must account for the appearance

of alteration. He may show that the alteration was made by another without his concurrence, or was *made with the consent of the parties affected by it,* or otherwise properly or incorrectly made, or that the alteration does not change the meaning or language of the instrument. If he does this, he may give the writing in evidence, *but not otherwise.*

(Emphasis added).

Plaintiff claims that the original deed or a duplicate was altered with the consent of the parties affected by it, namely, Garth Boswell, the Larsens and Plaintiff William P. Boswell. However, neither the document nor admissible statements of any "affected" person including the grantor, Marsden Larsen, substantiate such consent.

The original deed naming Garth Boswell as grantee has never been produced, so the Court has not been able to inspect it. It is either lost, intentionally misplaced, hidden, or inexplicably missing. In his deposition in 1999, when asked about the whereabouts of the original deed, Plaintiff William P. Boswell stated: "I've never seen it."

The Court has inspected the altered deed which plaintiff seeks to have the Court admit into evidence. It is clear and very apparent that the deed in question was altered to insert plaintiff's name and his d/b/a in the place of Garth Boswell as grantee. Both parties agree that the deed sought to be offered into evidence is an altered original. Under the terms of the UREC, Garth Boswell alone was to receive delivery of the original 1974 deed which named him as grantee. The UREC makes no reference to Plaintiff, or to any intention by the parties to have the feed yard conveyed to Plaintiff.

As to consent to the alteration, only the belated, self serving affidavit of Garth Boswell—taken after and in contradiction of

his own testimony in two prior depositions—has been submitted. The said affidavit was executed in February 2000 and contains this averment by Garth Boswell: "[i]n 1980, by agreement between the Larsens ... the grantee on the deed was changed to be "RAFTER 'B' RANCH, c/o William P. Boswell." That testimony is in direct conflict with Garth Boswell's sworn deposition testimony in 1981 wherein he stated that he not only holds title to the feed yard, but that the deed representing his title to the feed yard was located "in my home." It is also directly contrary to his deposition testimony in this case wherein he stated that he was unaware that any changes were ever made to the deed executed in 1974 bearing his name.

Marsden Larsen's deposition testimony taken in February 2000, falls far short of establishing any claim that Larsen consented to substitution of William P. Boswell in the place of his father in the altered deed. Marsden Larsen testified as follows:

Q. "Assume that Garth Boswell has testified that you agreed that the deed to the feedyard from you and your wife would be put in the name of Rafter 'B' Ranch, c/o William P. Boswell, do you remember clearly whether you agreed to do that?"

A. "I don't remember any of those things. I know there was a lot of shuffling around. And you've got to know Garth Boswell and get mixed up with him to understand."

(Marsden dep. at 24).

Given the totality of the circumstances surrounding the deed, the Court finds that the deed was materially altered without the consent of the parties affected by it. Plaintiff's assertion that the deed was materially altered with "the consent of the parties affected by it," as provided in Utah Code Ann. § 78–25–17, is unsupported by competent evidence. In spite of his allega-

tion that he received the deed in question in 1974, plaintiff fails to explain why the Trust Deed grantees, i.e., Zions First National Bank and the FHA, were never given notice or consented to any change. Those entities were sureties to substantial loan agreements with Garth Boswell. This Court finds that plaintiff has failed to carry the burden of proof to establish there exists an issue of fact which could be presented to a fact finder showing that the altered deed reflected any alleged agreement entered into by the parties. *See Hartman v. Young*, 551 P.2d 229, 231 (Utah 1976). This Court also finds and concludes as a matter of law that plaintiff has failed to present any material and admissible evidence to establish loss of title or abandonment of legal and/or equitable title to the feed yard properties by Garth Boswell.

■ The belated assertions by way of an affidavit by Garth Boswell to the effect that he had no interest or title at the time he filed bankruptcy are found by this court to be distortions of the truth. The said affidavit contains averments directly contrary to sworn prior deposition testimony. The statements of Garth Boswell set forth in his affidavit appear to the Court to have been filed in order to create a sham fact issue, and the Court so finds. In this regard, defendants previously moved this Court to strike the said February 2000 affidavit of Garth Boswell because it conflicted with prior deposition testimony. This Court did not find it necessary in prior hearings to rule on the said Motion to Strike, but it does do now, and in so ruling also acts on its own initiative. Accordingly, defendants' Motion to Strike is granted, and the statements set forth in the affidavit are of no effect and are disregarded. *See Hollins v. Delta Airlines*, 238 F.3d 1255, 1259 n. 1 (10th Cir.2001) ("Before disregarding an affiant's conflicting

affidavit, a district court judge must determine whether, as an evidentiary matter, the affidavit was submitted in order to create a 'sham fact issue.' ") (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001). Garth Boswell had in his possession all pertinent evidence when he was deposed in 1981 and 1999, as well as at the time of his bankruptcy filing in 1982. His sworn prior testimony and statements are directly inconsistent with the affidavit which is herein stricken.

This Court finds and rules that the deed is inadmissible under Utah Code Annotated § 78–25–17.

### C. The Best Evidence Rule

■ Plaintiff asserts that the deed being offered as evidence of his ownership to the feed yard is a copy of the original deed with "changes" that were consented to by Garth Boswell and the Larsens. Therefore, Plaintiff argues, any distinction between an original and a duplicate copy of the deed is irrelevant "since it is apparent from the copy of the deed that the original contained changes, and since the Plaintiff is prepared to stipulate to that fact, the copy is as good as the original." This is a creative but distinctly unpersuasive argument.

Rule 1002 of the Federal Rules of Evidence states:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Rule 1003 of the Federal Rules of Evidence provides that:

> [a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circum-

stances it would be unfair to admit the duplicate in lieu of the original.

In this case, a genuine issue as to the authenticity of the original exists. In U.S. v. *Haddock*, trial courts were admonished to "be wary of admitting duplicates where the circumstances surrounding the execution of the writing present a substantial possibility of fraud." 956 F.2d 1534, 1545–1546(10th Cir.1992). This Court concludes that there is a genuine question as to the authenticity of the proffered altered deed. In all events, under the circumstances presented in this record it would be unfair to admit the altered deed as an original or duplicate in lieu of the original. The original has not been produced. The altered deed does not pass muster under the Best Evidence Rule or otherwise. Accordingly, the said altered deed must not be admitted into evidence.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

■ Based upon the Court's analysis in connection with Defendant's Motion to Exclude Warranty Deed from Evidence, no genuine issues of fact remain. Accordingly, Defendant's Motion for Summary Judgment should be granted.

After due consideration of applicable equities, judgment is ordered to be entered as an adjudication of full ownership rights in the feed lot and related properties in favor of defendant Jasperson and against plaintiff, exclusive of any monetary award or an award of attorneys fees. Defendant Jasperson is entitled to possession of the property and to have title quieted in his favor. Further, plaintiff should be enjoined from asserting any claim of right or title to the said properties.

### CONCLUSIONS OF LAW

Legal conclusions set forth in previous portions of this Memorandum Decision,

where applicable, are in addition to and supplemental to the following Conclusions of Law:

*Defendant's Motion for Exclusion of Warranty Deed from Evidence*

1. The Warranty Deed designating Plaintiff as the grantee to the feed yard is an alteration of the original Warranty Deed made without the consent of affected persons, including the Larsens as sellers.

2. Garth Boswell had legal and equitable title to the properties including the feed yard from October 1974 until his Chapter 11 bankruptcy filing in August 1982. At that time, the properties became a part of the bankruptcy estate.

3. The feed yard and other properties were properly and validly conveyed by the bankruptcy Trustee to the United States of America (FHA). The FHA was a bonafide purchaser for value.

4. The FHA properly and validly conveyed the feed yard and other properties to Defendant Jasperson. Jasperson was a bonafide purchaser for value.

5. The Warranty Deed was not altered or recorded with the consent of the parties and persons affected by it, including, the Larsens, and the Trust Deed grantees, Zions First National Bank and the FHA, and does not meet the terms for admissibility in evidence as provided in Utah Code Ann. § 78–25–17 and as required by the Best Evidence Rule.

6. Garth Boswell's February 2000 affidavit was created to establish a sham fact issue and should be and is disregarded and stricken.

*Defendant's Motion for Summary Judgement*

7. No genuine issues of material fact remain. The dispositive issue has been resolved in Defendant's favor, namely that Garth Boswell had legal and equitable title to the feed at the time of his Chapter 11 bankruptcy filing in August 1982. At that

time the feed yard and other properties became a part of the bankruptcy estate.

8. Defendant Jasperson obtained valid title to the feed yard and other properties.

9. Defendant Jasperson is entitled to immediate possession of the properties and to have title to the properties quieted in his favor.

10. Judgment should be entered in favor of defendant Jasperson and against plaintiff as to the full rights of ownership in and to the feed lost and related properties; title to the said properties is quieted in favor of defendant Jasperson.

11. Judgment in favor of defendant Jasperson is restricted to adjudication of ownership and possession rights, excluding any monetary award or order for attorneys fees.

Based upon the foregoing, it is hereby

ORDERED that Defendant's Motion to Strike Garth Boswell's Affidavit executed in February 2000 is hereby GRANTED; it is

FURTHER ORDERED, that Defendant's Motion to Exclude Warranty Deed from Evidence is hereby GRANTED; it is

FURTHER ORDERED, that Defendant's Motion for Summary Judgment is hereby GRANTED and Judgment is ordered to be entered in favor of Defendant and against Plaintiff in accordance with this Memorandum Decision and Order.

Counsel for Defendant Jasperson is directed to submit and lodge with the Court within 30 days after the date of this Order a Proposed Form of Judgment in accordance with this Court's Memorandum Decision and consistent with this Court's findings and Conclusions of Law. The Proposed Judgment shall have been submitted to Plaintiff Boswell for approval as to form

in accordance with local Rules of this Court.